611 A.2d 1030

**David V. THANNER**

v.

**STATE of Maryland.**

**No. 1214, Sept. Term, 1991.**

Court of Special Appeals of Maryland.

Sept. 3, 1992.

---

Nancy S. Forster, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Maureen O'F. Gardner, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Sandra A. O'Connor, State's Atty. for Baltimore County, Towson, on the brief), for appellee.

Submitted before WILNER, C.J., and BLOOM and HARRELL, JJ.

WILNER, Chief Judge.

Appellant was convicted in the Circuit Court for Baltimore County of possession of PCP. There are no appellate issues arising out of the trial itself; the only complaint made by appellant concerns the denial of his pre-trial motion to suppress evidence seized upon his arrest.

## Facts

In the early morning hours of October 6, 1990, Officer Brian Powell, of the Baltimore County Police Special Enforcement Unit, parked his unmarked police car in the parking lot of a shopping center, where "[w]e were then and we are still now having a lot of drug activity ..." in order "to do surveillance [and] to arrest people using drugs." Appellant and a passenger were parked in the same parking lot in a Jeep Cherokee. Officer Powell observed a man "standing outside of [appellant's Jeep] leaning in the window of the driver's side of the Jeep, where [appellant] was seated" and suspected that a drug deal was in progress. Powell "saw [appellant] hand something to" the man standing outside the Jeep but could not identify what was passed between appellant and the man. He said that the two individuals in the Jeep were acting nervous both during and after the transaction. Powell called for a uniformed police backup because he anticipated that appellant would leave the parking lot momentarily.

Appellant then drove from the shopping center parking lot onto Belair Road, a public highway, without having turned on his headlights. With the assistance of another officer in a marked police vehicle, Officer Powell stopped appellant and immediately walked to the side of the Jeep. As appellant opened the door, Officer Powell smelled a strong odor of PCP coming from the Jeep. He "shined [his] flashlight to illuminate the inside of the [Jeep]" and saw "green parsley flakes all over the lap of [the passenger and] around the center console [and] some EZ-wider piece[s] of rolling paper on the floor...." The officer also testified that he found about a gram of PCP on appellant's person.

When questioned at the suppression hearing about his reason for stopping appellant, Officer Powell testified that the primary reason was so he could look inside of the Jeep and, secondly, "because his lights were out." When asked if he would issue a citation to a driver for driving without his headlights on, Officer Powell first noted that, "I don't write tickets in my unit" and, as a result, "I would never write somebody a ticket, me personally, for having their headlights out." He immediately added, however, that "[he] would let them know and stop them."

In denying appellant's motion to suppress, the court determined that it was unnecessary to rule on the issue of whether the suspicious activity observed by Officer Powell constituted sufficient "articulable suspicion" to stop appellant's car. Rather, it concluded:

"The simple fact is that Defendant drove off the parking lot and proceeded to travel on a public roadway without turning on his headlights. This clearly constituted a traffic violation which gave rise to the justification for stopping Defendant. Officer Powell was operating within the realm of lawful surveillance when he noticed a blatant violation of the traffic law. The stop, therefore was proper, and any evidence seized pursuant to said stop is admissible."

Appellant complains that, in so justifying its ruling, the court failed "to address the question of pretext," which, the record shows, was raised in oral argument on the motion. More affirmatively, he complains that "Officer Powell's alleged traffic stop of Appellant's vehicle was merely a pretext for an opportunity to search the vehicle for drugs."

### Discussion

A "pretextual stop," in the context of this case, was well-defined in *U.S. v. Guzman*, 864 F.2d 1512, 1515 (10th Cir.1988):

"A pretextual stop occurs when the police use a legal justification to make the stop in order to search a person or place, or to interrogate a person, for an unrelated

serious crime for which they do not have the reasonable suspicion necessary to support a stop. The classic example ... occurs when an officer stops a driver for a minor traffic violation in order to investigate a hunch that the driver is engaged in illegal drug activity."

*See also U.S. v. Trigg,* 878 F.2d 1037 (7th Cir.1989).

Opinion seems to be divided, in both the Federal and State courts, as to the circumstances under which such a stop constitutes a violation of the Fourth Amendment, dictating the suppression of evidence seized pursuant to the stop. Interestingly, each view is regarded by its respective adherents as the "objective" view and purports to derive from the comment in *Maryland v. Macon,* 472 U.S. 463, 470–71, 105 S.Ct. 2778, 2782–83, 86 L.Ed.2d 370 (1985), quoting in part from *Scott v. United States,* 436 U.S. 128, 136, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168 (1978), that "[w]hether a Fourth Amendment violation has occurred 'turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time,' and not on the officer's actual state of mind at the time the challenged action was taken."

One camp, which includes the Tenth and Eleventh Circuit Courts of Appeal and the courts of Florida, Georgia, North Carolina, Utah, and Virginia, has adopted the view that "in determining when an investigatory stop is unreasonably pretextual, the proper inquiry ... is not whether the officer *could* validly have made the stop but whether under the same circumstance a reasonable officer *would* have made the stop in the absence of the invalid purpose." *United States v. Smith,* 799 F.2d 704, 709 (11th Cir.1986). Under this view, it would appear that the State must establish two things in order to overcome an otherwise supportable motion to suppress: (1) that the officer himself purported to base the stop at least in part on the traffic violation, thus raising the basis for the pretextual argument, and (2) apart from the officer's declared motive or subjective intent, a "reasonable officer *would* have made the seizure in the absence of illegitimate motivation." *Id.* at 708. Holding to

that view as well are *U.S. v. Miller,* 821 F.2d 546 (11th Cir.1987); *U.S. v. Valdez,* 931 F.2d 1448 (11th Cir.1991); *U.S. v. Guzman, supra,* 864 F.2d 1512; *Kehoe v. State,* 521 So.2d 1094 (Fla.1988); *Tarwid v. State,* 184 Ga.App. 853, 363 S.E.2d 63 (1987); *State v. Morocco,* 99 N.C.App. 421, 393 S.E.2d 545 (1990); *State v. Marshall,* 791 P.2d 880, *cert. denied,* 800 P.2d 1105 (Utah App.1990); *Limonja v. Com.,* 7 Va.App. 416, 375 S.E.2d 12 (1988), *cert. denied,* 495 U.S. 905, 110 S.Ct. 1925, 109 L.Ed.2d 288 (1990).

The Fifth, Seventh, and Eighth Circuit Courts of Appeal and the courts of Idaho, Oregon, and Texas have rejected that approach and have looked instead to whether the officer *could,* not *would,* have stopped the vehicle but for his other suspicions. As stated by the Fifth Circuit Court, sitting *en banc* in *U.S. v. Causey,* 834 F.2d 1179, 1184 (5th Cir.1987), "so long as police do no more than they are objectively authorized and legally permitted to do, their motives in doing so are irrelevant and hence not subject to inquiry." Expounding further, the Court stated, at 1184–85:

> "The correct rule is that, while a showing of objectively reasonable good faith on the part of police officers will ordinarily redeem honest errors and prevent the applica-tion of the exclusionary rule, in a case where the officers have taken no action except what the law objectively allows their subjective motives in doing so are not even relevant to the suppression inquiry. And the reason lies in the purpose of that rule: to deter *unlawful* actions by police. Where nothing has been done that is objectively unlawful, the exclusionary rule has no application and the intent with which they acted is of no consequence."

(Emphasis in the original.) *See also U.S. v. Gallo,* 927 F.2d 815 (5th Cir.1991); *U.S. v. Trigg, supra,* 878 F.2d 1037; *U.S. v. Cummins,* 920 F.2d 498 (8th Cir.1990); *State v. Myers,* 118 Idaho 608, 798 P.2d 453 (1990); *State v. Tucker,* 286 Or. 485, 595 P.2d 1364 (1979); *Gordon v. State,* 801

S.W.2d 899 (Tex.Cr.App.1990).[1]

Although the Maryland courts have not discussed the issue in quite these terms—*would* vs. *could*—the Court of Appeals seems clearly to be in the second ("could") camp. Citing principally *State v. Sedacca,* 252 Md. 207, 221–22, 249 A.2d 456 (1969) and *Cornish v. State,* 215 Md. 64, 66–67, 137 A.2d 170 (1957), the Court noted in *Foster v. State,* 297 Md. 191, 217, 464 A.2d 986 (1983), *cert. denied,* 464 U.S. 1073, 104 S.Ct. 985, 79 L.Ed.2d 221 (1984):

> "This Court has recognized that an arrest may not be used as a pretext to search for evidence.... Additionally, this Court has stated that when an arresting officer has two or more purposes for making an arrest, one of which is to make a valid arrest for the commission of a crime and the other of which is to obtain evidence of a different crime, the duality of purpose will not, in and of itself, transform the arrest into a pretext arrest."

Factually, *Sedacca* is closer in point than *Foster.* The officers there, observing Sedacca's car while parked and unattended, suspected that it might be carrying untaxed cigarettes, although that suspicion, even in their minds, was insufficient to support a search of the vehicle. They waited until Sedacca returned and then followed him,

> "hopeful that if and when a violation of the motor vehicle laws occurred in their presence, they might possibly obtain sufficient information as a result of the arrest of Sedacca for that crime and an investigation incident to that arrest, to discover what was being transported in the rear section of the heavily loaded vehicle."

252 Md. at 221, 249 A.2d 456. Sedacca was careless enough to "run" a stop sign, whereupon the officers pounced and

---

1. The Supreme Court has recently denied review of cases raising pretextual search claims. Justice White, however, dissented because of his concern that the split in the Courts of Appeals should be resolved. *See* Petitions for Writ of Certiorari, —— U.S. ——, ——, 112 S.Ct. 428, 116 L.Ed.2d 448, 449 (1991), *Cummins v. United States,* No. 90–1628; *Trigg v. United States,* No. 91–5013; *Enriquez–Nevarez v. United States,* No. 91–5087.

carried out their plan. This Court found the traffic stop and arrest pretextual and suppressed the evidence, *Sedacca v. State*, 2 Md.App. 617, 236 A.2d 309 (1967), but the Court of Appeals reversed for the reasons repeated in *Foster, supra.*

The thrust of *Foster* and *Sedacca* is that, if there is a valid basis for making a stop, including observation of a legitimate traffic violation, the fact that the officer made the stop in the hope of obtaining evidence of some other crime does not make the stop unlawful. That view is entirely consistent with, and necessarily rests upon, the doctrine expressed in *Causey, supra*, 834 F.2d at 1184, that "so long as police do no more than they are objectively authorized and legally permitted to do, their motives in doing so are irrelevant and hence not subject to inquiry."

Even if we were to find the issue an open one in Maryland, we could, and would, affirm without having to choose between the two points of view, for, in light of Officer Powell's testimony, we are convinced that the initial stop was justified under either view. Certainly, Officer Powell "could" have stopped appellant for operating a motor vehicle on a public highway at night without headlights. *See* Md.Code Transp. art., § 22–201.1. A violation of § 22–201.1 is a misdemeanor (Transp. art., § 27–101(a)), and any police officer is authorized to stop a vehicle upon the commission of a misdemeanor in his presence (Transp. art., § 26–201). That kind of violation, moreover, in the universe of traffic violations, is not petty; it is dangerous, both for the occupants of the vehicle and for other vehicles and pedestrians. We have no doubt, therefore, that a reasonable police officer not only *could,* but *would,* have stopped appellant, if not to issue a ticket, at least to warn him to turn on his lights. That is what Officer Powell said he would have done and we have no reason from this record to doubt that, quite apart from his desire to investigate the suspected drug activity, he would have stopped appellant or any other car driving at night without headlights, at least to give a warning.

Appellant does not contest in this appeal Officer Powell's testimony that, as he approached appellant's car, he "smelled ... a strong chemical odor, which I knew immediately to be Phencyclidine, PCP," and that, as he shined his flashlight into the open car, he observed parsley flakes all over the passenger's lap. That certainly authorized Powell to proceed further to make the arrest and search him and the car.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.