STATE of Utah, Plaintiff, Petitioner, and Cross–Respondent,

v.

Gerard Cotero J. LOPEZ, Defendant, Respondent, and Cross–Petitioner.

No. 920319.

Supreme Court of Utah.

April 25, 1994.

R. Paul Van Dam, Atty. Gen., J. Kevin Murphy, David B. Thompson, Asst. Attys. Gen., Salt Lake City, for plaintiff.

James A. Valdez, Joan C. Watt, Elizabeth Holbrook, Salt Lake City, for defendant.

HOWE, Justice:

The trial court granted defendant's motion to suppress the cocaine that police officers found in his vehicle during an inventory search. The State filed a petition for interlocutory review with the court of appeals, which granted the petition and reversed the suppression order. The court of appeals held that the trial court had misapplied the pretext stop doctrine and had failed to enter adequate findings of fact on reasonable suspicion. *State v. Lopez*, 831 P.2d 1040 (Utah Ct.App.1992). The court refused the State's invitation to abandon the pretext stop doctrine. We granted both the State's petition and defendant's cross-petition for a writ of certiorari.

## FACTS

Because the trial court's written findings do not describe the circumstances giving rise to this case, we look to the record of the suppression hearing for the relevant facts. At about 9 p.m. on June 19, 1990, Officer Hamner saw defendant driving south on 400 East Street in Salt Lake City. He recognized defendant's car as one he had seen on several occasions near two local bars where illegal drug use was known to occur. Hamner testified that he recognized defendant as Jose Cruz, a known drug dealer, from his undercover work on the Metro Narcotics Strike Force nine months earlier. During that time, defendant had been "pointed out" to him as Cruz. Hamner had on one occasion personally met the individual he believed to be Cruz. He had also seen photographs of Cruz during his work on the strike force.

Knowing that nine months earlier Cruz had not possessed a valid driver's license, Hamner decided to run a license check on him. The check yielded, "[N]o record of [Cruz] having a driver's license." Relying on this information, he drove from the alley in which he was parked and began to follow

defendant. Defendant turned left onto 700 South Street and, according to Hamner's testimony, made the turn without signaling. Hamner then activated his overhead lights and stopped defendant. At the suppression hearing, he testified that he suspected defendant of illegal drug activity but that he made the stop because defendant was driving without a license and had failed to signal before turning.

Defendant was unable to produce a driver's license, but he did give Hamner an identification card with the name Geraldo Lopez on it. A license and warrants check on Geraldo Lopez showed no license and three outstanding warrants. Hamner arrested defendant on the warrants and cited him for driving without a license and for failing to signal before turning. Later, officers conducted an inventory search of defendant's car and discovered several bags of cocaine. The State charged him with unlawful possession of cocaine with intent to distribute, a second degree felony under Utah Code Ann. § 58–37–8(1)(a)(iv).

Defendant moved to suppress the cocaine on the grounds that "there was no reasonable suspicion ... to believe that [he] had committed or was committing a public offense" and that "the stop was a pretext stop to conduct a fishing expedition type search." The trial court granted defendant's motion, concluding that the stop was a "pretext stop" and therefore the "subsequent search of the car and seizure of the contraband ... violated Mr. Lopez's state and federal constitutional rights against unreasonable searches and seizures."

The court of appeals granted the State's petition for interlocutory review and, despite the State's invitation to do otherwise, retained the pretext stop doctrine. In a lengthy dissenting opinion, Judge Russon accepted the State's invitation to "reconsider the pretext analysis." *Lopez*, 831 P.2d at 1050–56. He rejected the pretext stop doctrine and recommended "a return to the basic analysis of the legality of seizures established in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979)." 831 P.2d at 1051.

The *Lopez* majority reversed the suppression order because the trial court had "erred in focusing exclusively on Officer Hamner's subjective state of mind" in determining whether this was a pretext stop. *Lopez*, 831 P.2d at 1047. It also remanded the case for further factual findings with regard to the pretext stop and reasonable suspicion. We granted the State's petition and defendant's cross-petition for a writ of certiorari.

## ADEQUACY OF TRIAL COURT'S FACTUAL FINDINGS

■ As cross-petitioner, defendant seeks to avoid remand, arguing that the trial court's factual findings are adequate. Because search and seizure issues are highly fact sensitive, "detailed findings of fact are necessary to enable this court to meaningfully review the issues on appeal." *State v. Lovegren*, 798 P.2d 767, 770 (Utah Ct.App. 1990). Nevertheless, when a trial court has failed to make findings of fact on the record, we will "assume that the [trial court found facts] in accord with its decision" whenever it would be "reasonable to assume that the court actually made such findings." *State v. Ramirez*, 817 P.2d 774, 787–88 & n. 6 (Utah 1991).

Officer Hamner testified that while he was working as an undercover narcotics officer, defendant was "pointed out" to him as Jose Cruz, a known drug dealer. He also testified that he had personally met the individual he believed to be Cruz and had seen strike force photographs of him. A computer check on Cruz showed no driver's license. The trial court did not explicitly find whether these facts gave Hamner reasonable suspicion that defendant was driving without a license. Nevertheless, we agree with defendant's contention that the court of appeals erred in remanding the case for findings on this question.

A distinct finding that there was no reasonable suspicion to stop defendant for driving without a license would only make explicit what was already implicit in other findings. *Sorenson v. Beers*, 614 P.2d 159, 160 (Utah 1980). While the trial court determined that defendant was in fact "pointed out to Officer

Hamner by someone else on a previous occasion ... as Jose Cruz," it also found that Cruz was the "wrong name" for defendant and that Hamner had "relied on erroneous information and stopped who he thought was Jose Cruz in order to search for drugs." The court further found that "there was no testimony that Mr. Lopez had ever represented himself to Officer Hamner as being named or going by the name of Jose Cruz." In short, the court determined that "all conclusions as to the identity of Mr. Lopez as Jose Cruz were erroneous." Also, at the close of the suppression hearing, the trial judge stated that "the officer only met [defendant] on one occasion so he would not be someone that would be very familiar to the officer." He also said that in running the initial license check, Hamner "could have applied a mistaken name." Finally, he concluded that "the stop ... was insufficient." Based on these oral and written findings, it is reasonable for us to conclude that the trial court found no reasonable suspicion to stop defendant for driving without a license. This is implicit in the court's findings of fact and consistent with its suppression order.

Finally, noting that the court "referred to [the] turn of his car as a fact and to his alleged failure to signal as a contention of the officer," defendant argues that it is reasonable for us to assume the court found that he did not turn left onto 700 South Street without signaling. The court did not make a specific finding on whether defendant made an illegal left turn. It simply found that "[O]fficer Hamner observed defendant make a left turn and *says* he did not see a signal at which time a stop was made" (emphasis added). A finding that defendant *did not* make an illegal turn is consistent with the court's decision that the detention was a pretext stop. As the court of appeals explained, the pretext doctrine has been applied "where the facts demonstrated the driver did not commit a traffic violation." *State v. Lopez*, 831 P.2d 1040, 1044 (Utah Ct.App.1992). However, a finding that a traffic violation *did* occur is also consistent with the court's decision, since the pretext doctrine has been applied where "the driver committed a minor traffic violation ... but where the court concludes that a

reasonable officer would not have stopped the vehicle." *Id.*

Summarizing the testimony at the suppression hearing, the trial judge specifically found, "The officer testified he wouldn't have stopped [Lopez] for the improper turn." Under the court of appeals' pretext stop doctrine, this testimony rendered the occurrence of the improper left turn immaterial because Hamner essentially conceded that a reasonable officer would not have stopped defendant for that reason alone. *See State v. Sierra*, 754 P.2d 972, 978 (Utah Ct.App.1988), *rev'd on other grounds, State v. Arroyo*, 796 P.2d 684, 689–92 (Utah 1990). The court simply did not have to decide whether defendant made an unlawful turn in Officer Hamner's presence. Because that determination is critical to our decision, we must remand the case to the trial court to resolve it, as hereinafter discussed.

## CONSTITUTIONALITY OF THE STOP

■ The Fourth Amendment of the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The United States Supreme Court has held that "stopping an automobile and detaining its occupants constitute[s] a seizure" within the meaning of the Fourth Amendment, "even though the purpose of the stop is limited and the resulting detention quite brief." *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979). Thus, "[a]lthough a person has a lesser expectation of privacy in a car than in his or her home, one does not lose the protection of the Fourth Amendment while in an automobile." *State v. Schlosser*, 774 P.2d 1132, 1135 (Utah 1989) (citation omitted).

■ However, "'what the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures.'" *Terry v. Ohio*, 392 U.S. 1, 9, 88 S.Ct. 1868, 873, 20 L.Ed.2d 889 (1968) (quoting *Elkins v. United States*, 364 U.S. 206, 222, 80 S.Ct. 1437, 1446–47, 4 L.Ed.2d 1669 (1960)). To determine whether a search or seizure is constitutionally reasonable, we make a dual inquiry: (1) Was the police officer's action

"justified at its inception"? and (2) Was the resulting detention "reasonably related in scope to the circumstances that justified the interference in the first place"? *Id.* at 19–20, 88 S.Ct. at 1879.

■ As to the first inquiry, a police officer is constitutionally justified in stopping a vehicle if the stop is "incident to a traffic violation committed in the officers' presence." *State v. Talbot,* 792 P.2d 489, 491 (Utah Ct.App.1990); *see also State v. Marshall,* 791 P.2d 880, 881–83 (Utah Ct.App.1990); *State v. Sierra,* 754 P.2d 972, 975 (Utah Ct.App. 1988). An observed traffic violation gives the officer "at the least, probable cause to believe the citizen had committed a traffic offense." *State v. Smith,* 781 P.2d 879, 882 n. 2 (Utah Ct.App.1989); *see also United States v. Cummins,* 920 F.2d 498, 500 (8th Cir.1990) (holding that "[w]hen an officer observes a traffic offense—however minor—he has probable cause to stop the driver of the vehicle"); *State v. Cole,* 674 P.2d 119, 123 (Utah 1983). An observed violation, however, is not required. Stopping a vehicle may also be justified when the officer has "reasonable articulable suspicion that the driver is committing a traffic offense, such as driving under the influence of alcohol or driving without a license ... [or that] the driver is engaged in more serious criminal activity, such as transporting drugs." *State v. Lopez,* 831 P.2d 1040, 1043 (Utah Ct.App.1992); *see State v. Deitman,* 739 P.2d 616, 617–18 (Utah 1987). In the words of the United States Supreme Court, as long as an officer suspects that the "driver is violating any one of the multitude of applicable traffic and equipment regulations," the police officer may legally stop the vehicle. *Prouse,* 440 U.S. at 661, 99 S.Ct. at 1400.

■ The second question is whether the stop was reasonably related in scope to the traffic violation which justified it in the first place. Once a traffic stop is made, the detention "must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983). Both the "length and [the] scope of the detention must be 'strictly tied to and justified by' the circumstances which ren-

dered its initiation permissible." *State v. Johnson,* 805 P.2d 761, 763 (Utah 1991) (quoting *Terry,* 392 U.S. at 19–20, 88 S.Ct. at 1878). This means that

> an officer conducting a routine traffic stop may request a driver's license and vehicle registration, conduct a computer check, and issue a citation. However, once the driver has produced a valid driver's license and evidence of entitlement to use the vehicle, "he must be allowed to proceed on his way, without being subjected to further delay by police for additional questioning."

*State v. Robinson,* 797 P.2d 431, 435 (Utah Ct.App.1990) (quoting *United States v. Guzman,* 864 F.2d 1512, 1519 (10th Cir.1988)). Investigative questioning that further detains the driver must be supported by reasonable suspicion of more serious criminal activity. Reasonable suspicion means suspicion based on specific, articulable facts drawn from the totality of the circumstances facing the officer at the time of the stop. *See State v. Mendoza,* 748 P.2d 181, 183 (Utah 1987); *State v. Munsen,* 821 P.2d 13, 15 (Utah Ct. App.1991); *Robinson,* 797 P.2d at 435. If reasonable suspicion of more serious criminal activity does arise, the scope of the stop is still limited. The officers must " 'diligently [pursue] a means of investigation that [is] likely to confirm or dispel their suspicions quickly, during which time it [is] necessary to detain the defendant.' " *State v. Grovier,* 808 P.2d 133, 136 (Utah Ct.App.1991) (quoting *United States v. Sharpe,* 470 U.S. 675, 686, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985)).

Running a warrants check without reasonable suspicion of criminal activity beyond the traffic offense itself arguably exceeds the reasonable scope of a traffic stop. Our decision in *Johnson* dealt with this question but is not dispositive. In *Johnson,* a police officer stopped a vehicle with faulty brake lights. The driver produced a driver's license with a name different from that of the registered owner. In addition, she was unable to produce a valid registration certificate. The officer then asked the defendant, who was a passenger in the vehicle, for her license. She "denied having a driver's license or any identification, but did give [the officer] her name and date of birth." *Johnson,* 805 P.2d

at 762. A warrants check on the driver and the defendant revealed that the defendant had outstanding warrants. The defendant was arrested, and a search of her backpack incident to that arrest uncovered drug paraphernalia, amphetamines, and her Utah identification.

We reversed the defendant's conviction of possession of a controlled substance, holding that her Fourth Amendment rights had been violated and "the evidence obtained pursuant to the arrest [should have been] suppressed." *Id.* at 764. We explained that "[w]hile the lack of a registration certificate and the fact that the occupants did not own the car raised the possibility that the car might be stolen, this information, without more, does not rise to the level of an articulable suspicion that the car was stolen." *Id.* The officer did not inquire about the registered owner, nor did he check stolen car records. The "paucity of facts" available to him simply did not justify the detention of the passenger. Thus, we concluded that "the leap from asking for the *passenger's* name and date of birth to running a warrants check on her severed the chain of rational inference from specific articulable facts and degenerated into an attempt to support an as yet 'inchoate and unparticularized suspicion or "hunch." ' " *Id.* (emphasis added) (quoting *Terry,* 392 U.S. at 27, 88 S.Ct. at 1883). We did not hold, however, that running the warrants check on the driver exceeded the lawful scope of the routine traffic stop, nor did we hold that a warrants check on a passenger could never be justified by specific articulable facts.

In defining the scope of Fourth Amendment rights, "there is 'no ready test for determining reasonableness other than by balancing the need to search [or seize] against the invasion which the search [or seizure] entails.' " *Terry,* 392 U.S. at 21, 88 S.Ct. at 1879 (quoting *Camara v. Municipal Court,* 387 U.S. 523, 534–35, 87 S.Ct. 1727, 1733–34, 18 L.Ed.2d 930 (1967)). On one hand, the impact of a warrants check on the scope of detention is minimal because "computerized data storage renders the time for a records check negligible." *State v. Ybarra,* 156 Ariz. 275, 751 P.2d 591, 592 (App.1987). On the other hand, the governmental interest

in arresting citizens who have outstanding warrants is substantial. *Storm v. State,* 736 P.2d 1000, 1001–02 (Okla.Crim.App.1987). Dicta in *Michigan v. Summers,* 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981), suggests that a warrants check during an investigatory detention would not violate the Fourth Amendment. In *Summers,* the Supreme Court wrote that a valid investigatory stop may include "a request for identification and inquiry concerning the suspicious conduct of the person detained." *Id.* at 700 n. 12, 101 S.Ct. at 2593 n. 12. It went on to explain that a police officer may "communicate with others, *either police* or private citizens, in an effort … [to] determine whether a person of that identity is otherwise wanted" so long as the period of detention is not "unduly long." *Id.* (emphasis added).

■ Accordingly, we hold that running a warrants check during the course of a routine traffic stop does not violate the Fourth Amendment, so long as it does not significantly extend the period of detention beyond that reasonably necessary to request a driver's license and valid registration and to issue a citation. *See Lopez,* 831 P.2d at 1052 (Russon, J., dissenting); *People v. McGaughran,* 25 Cal.3d 577, 159 Cal.Rptr. 191, 601 P.2d 207, 211 (1979) (holding that if warrants check can be completed in "period of time necessary to discharge the duties [an officer] incurs by virtue of the traffic stop," then stop is lawful because check does "not add to the delay already lawfully experienced by the offender as a result of his violation" and does "not represent any further intrusion on his rights"); *State v. Smith,* 73 Or.App. 287, 698 P.2d 973, 976 (1985) (holding that "[a] warrant check may become unreasonable … if, for instance it takes an inordinately long time to complete") (citing *State v. Carter,* 34 Or. App. 21, 32, 578 P.2d 790 (1978), *aff'd,* 287 Or. 479, 600 P.2d 873 (1979)); *Petty v. State,* 696 S.W.2d 635, 638–39 (Tex.Ct.App.1985).

■ As explained above, the trial court implicitly found that Officer Hamner did not have a reasonable suspicion that defendant was driving without a license. However, the case must be remanded to the trial court to determine whether defendant made a left

turn without signaling.[1] If he did not make an illegal left turn, the stop was not justified at its inception and the evidence derived from it must be suppressed. If he did make the unlawful turn, then probable cause justified the stop. The trial court must then determine whether the detention was reasonably related in scope to the traffic violation. To decide this question, the court must determine whether the warrants check significantly extended the period of detention beyond that reasonably necessary to request defendant's license and registration and to issue a citation.

## THE PRETEXT STOP DOCTRINE AND THE FOURTH AMENDMENT

In deciding the reasonableness of the instant traffic stop under the Fourth Amendment, we have applied the dual inquiry articulated in *Terry v. Ohio*, 392 U.S. 1, 9, 88 S.Ct. 1868, 1873–74, 20 L.Ed.2d 889 (1968). The court of appeals did not engage in this analysis below. Rather, it relied on the pretext stop doctrine. Defining that doctrine and the circumstances to which it applies, the *Lopez* majority wrote:

1. Turning without giving an appropriate signal is a violation of Utah Code Ann. § 41–6–69(1)(a) ("A person may not turn a vehicle … until the movement can be made with reasonable safety and an appropriate signal has been given.").

2. The State argues that defendant waived any independent analysis under article I, section 14 because he only "nominally alluded" to the provision in his motion to suppress and because he "made no reference to the state search and seizure provision" before the trial court. The court of appeals limited its analysis below to the Fourth Amendment because defendant did not argue that the analysis should differ under article I, section 14. *Lopez*, 831 P.2d at 1043 n. 2. Before this court, defendant raises for the first time the argument that we should adopt the pretext doctrine under article I, section 24. The State contends that he "waived any distinct analysis" under article I, section 24 because he "made no reference to [it] in his motion to suppress."

 We need not decide whether defendant's state constitutional arguments were adequately raised and argued before the trial court because "exceptional circumstances" justify our entertaining them on appeal. *Jolivet v. Cook*, 784 P.2d 1148, 1151 (Utah 1989); *State v. Archambeau*, 820 P.2d 920, 925–26 (Utah Ct.App.1991). At the time of

In Utah, the pretext doctrine applies in cases where an officer claims to have stopped a vehicle for a minor traffic violation, but where the court determines the stop was not made because of the traffic violation but rather due to an unconstitutional motivation and, therefore, the officer has deviated from the normal course of action expected of a reasonable officer. We have articulated the pretext doctrine as whether a "reasonable … officer, in view of the totality of the circumstances confronting him or her, *would* have stopped the vehicle."

*State v. Lopez*, 831 P.2d 1040, 1044 (Utah Ct.App.1992) (citation omitted) (quoting *State v. Sierra*, 754 P.2d 972, 978 (Utah Ct.App. 1988), *rev'd on other grounds, State v. Arroyo*, 796 P.2d 684, 689–92 (Utah 1990)). The State urges us to reject this doctrine, while defendant, as cross-petitioner, urges us to adopt it under article I, section 14 and article I, section 24 of the Utah Constitution.[2]

From its beginning in *State v. Sierra*, 754 P.2d 972, 978 (Utah Ct.App.1988), the pretext stop doctrine has occupied a prominent place in the Fourth Amendment jurisprudence of the court of appeals.[3] In fact, the doctrine

the suppression hearing, the pretext doctrine was the controlling rule of Fourth Amendment law as interpreted by the court of appeals. Defendant had no reason to argue that the doctrine be adopted under article I, section 14 until the State challenged the doctrine on appeal. Likewise, arguments under article I, section 24 did not appear applicable until the court of appeals ruled that "equal protection policies constrain us to uphold the pretext doctrine." *Lopez*, 831 P.2d at 1046.

3. *See, e.g., State v. Delaney*, 869 P.2d 4, 6 (Utah Ct.App.1994); *State v. Harmon*, 854 P.2d 1037, 1039–40 (Utah Ct.App.1993); *State v. Chapman*, 841 P.2d 725, 727 n. 2 (Utah Ct.App.1992), *cert. granted*, 857 P.2d 948 (Utah 1993); *State v. Cruz*, 838 P.2d 83, 84–85 (Utah Ct.App.1992); *Lopez*, 831 P.2d at 1044–50; *State v. Figueroa–Solorio*, 830 P.2d 276, 281–82 (Utah Ct.App.1992) (opinion of Orme, J., joined by Billings, J.); *State v. Lovegren*, 798 P.2d 767, 771 n. 10 (Utah Ct.App. 1990); *State v. Robinson*, 797 P.2d 431, 435 (Utah Ct.App.1990); *State v. Talbot*, 792 P.2d 489, 491–92 (Utah Ct.App.1990); *State v. Marshall*, 791 P.2d 880, 881–83 (Utah Ct.App.1990); *State v. Smith*, 781 P.2d 879, 882–83 (Utah Ct. App.1989); *State v. Arroyo*, 770 P.2d 153, 155 (Utah Ct.App.1989), *rev'd on other grounds*, 796 P.2d 684 (Utah 1990).

has enjoyed near uniform acceptance. Writing for the *Lopez* majority, Judge Billings noted, "Apart from Judge Russon's dissent in this case, every other judge on the Utah Court of Appeals has cited the pretext doctrine with approval." *Lopez*, 831 P.2d at 1044, n. 8. However, we find the doctrine unnecessary to protect citizens from unlawful searches and seizures. Moreover, it erroneously requires courts to assess the reasonableness of police conduct under the Fourth Amendment according to a subjective standard and discourages equal protection of the law. In short, as applied to traffic stops, the pretext doctrine is superfluous and conceptually flawed.

### 1. The Pretext Stop Doctrine Is Unnecessary To Protect Citizens from Unlawful Searches and Seizures

■ As explained, the pretext stop doctrine applies "where an officer claims to have stopped a vehicle for a minor traffic violation, but where the court determines the stop was not made because of the traffic violation but rather due to an *unconstitutional motivation*." *Lopez*, 831 P.2d at 1044 (emphasis added). Generally, the "unconstitutional motivation" is the police officer's desire to search for evidence of a more serious crime. Proponents of the pretext doctrine argue that when the officer does not have probable cause or reasonable suspicion to stop the driver for the more serious offense, the traffic stop is not justified at its inception and the Fourth Amendment is violated. We disagree.

An officer who observes a traffic violation has probable cause to stop the driver. *Smith*, 781 P.2d at 882 n. 2. Likewise, specific articulable facts may give an officer reasonable suspicion to believe that a driver is committing a traffic offense. *State v. Deitman*, 739 P.2d 616, 617–18 (Utah 1987). In either case, stopping the driver is constitutionally justified. This is so despite the officer's motivations or suspicions that are unrelated to the traffic offense. The "reasonable scope" requirement precludes the officer from investigating such motivations or suspicions because the detention can "last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983). The purpose of the stop is to request a driver's license and a valid registration, run a computer check on the car and/or the driver, and issue a citation. Unsupported by further probable cause or reasonable suspicion, inquiries by the officer to investigate suspicions unrelated to the traffic offense unconstitutionally extend the detention beyond the scope of the circumstances that rendered it permissible. Thus, existing Fourth Amendment law precludes an officer from extending the length or scope of a traffic stop to investigate a suspicion of wrongdoing which does not rise to the level of probable cause or reasonable suspicion. In light of this safeguard, we agree with the State's contention that "the pretext doctrine adds little if anything" to existing Fourth Amendment protections.

We recognize that the pretext doctrine is aimed at circumscribing the "standardless and unconstrained discretion ... of the official in the field." *Delaware v. Prouse*, 440 U.S. 648, 661, 99 S.Ct. 1391, 1400, 59 L.Ed.2d 660 (1979). However, police officers are under a duty to enforce the traffic laws. In a perfect world, there would be a sufficient number of police officers to enforce every violation of the traffic code, but in our imperfect world, police resources are limited and minor traffic laws are often not enforced, not as a matter of "standardless and unconstrained discretion," but as a matter of priority. A patrol officer can stop only one speeder at a time. While that driver is stopped and cited, other speeders proceed on their way, committing the same traffic offense with impunity. Admittedly, police officers must decide which one of many traffic offenders to stop. However, this decision is, for the most part, channelled by the desire of the police to apprehend the most serious offenders.

■ Finally, in retaining the pretext stop doctrine, the *Lopez* majority relied on the fact that the "Fourth Amendment's protection from unreasonable searches and seizures is primarily grounded in protecting an individual's reasonable expectation of privacy." *Lopez*, 831 P.2d at 1047. It wrote:

An individual does not have a reasonable expectation that the police will not make a traffic stop when the individual commits a traffic violation the police regularly enforce. Thus, if a driver is stopped for traveling at eighty miles an hour in a school zone or running a red light—traffic offenses all drivers know the police regularly enforce—the driver does not have a reasonable expectation of privacy. In this circumstance, the driver should not be able to avoid a stop simply because the police officer also subjectively believed the driver might be transporting drugs as such a stop is not "unexpected" or "arbitrary."

*Id.* Apparently, the court of appeals would find the converse of this reasoning true as well—drivers do have a reasonable expectation not to be stopped for traffic violations that the police do not regularly enforce. We disagree. Drivers do not have a constitutional right to violate any law enacted by the legislature. Any expectation to the contrary is unreasonable and need not be protected by the pretext doctrine.

### 2. The Pretext Stop Doctrine Erroneously Turns on the Subjective Motivation of the Detaining Police Officer

In *Terry*, 392 U.S.· at 21–22, 88 S.Ct. at 1879–81, the Supreme Court held that in assessing the reasonableness of a search or seizure under the Fourth Amendment, it is "imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or search warrant a man of reasonable caution in the belief that the action taken was appropriate." Seeking to apply this "objective standard," some courts

adopted the pretext stop doctrine or the "would" test.[4] As explained, under this view, the constitutionality of a traffic stop turns on whether a "reasonable ... officer, in view of the totality of the circumstances confronting him or her, *would* have stopped the vehicle." *Lopez*, 831 P.2d at 1044.

While objective on its face, the pretext doctrine is ultimately a subjective standard. The *Lopez* majority wrote that the pretext doctrine applies where an officer stops a traffic offender, "not ... because of the traffic violation but rather due to an unconstitutional motivation." *Id.* To apply this standard, courts must explore the detaining officer's state of mind and divine his or her true motives for making the stop. In fact, defendant concedes, "[O]ne cannot demonstrate pretextual behavior without considering the subjective intent of the officer," and therefore urges us to recognize subjective intent as "a relevant factor for courts to consider in assessing ... the reasonableness of [an officer's] actions."[5]

This subjective focus on the officer's state of mind at the time of the stop is inconsistent with Fourth Amendment law. In *Maryland v. Macon*, 472 U.S. 463, 470–71, 105 S.Ct. 2778, 2782–83, 86 L.Ed.2d 370 (1985), the Supreme Court emphasized that "[w]hether a Fourth Amendment violation has occurred 'turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time' and *not on the officer's actual state of mind* at the time the challenged action was taken" (emphasis added) (citation omitted) (quoting *Scott v. United States*, 436 U.S. 128, 136, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168

---

4. *United States v. Guzman*, 864 F.2d 1512, 1517 (10th Cir.1988); *United States v. Smith*, 799 F.2d 704, 708 (11th Cir.1986); *Kehoe v. State*, 521 So.2d 1094, 1096 (Fla.1988); *Tarwid v. State*, 184 Ga.App. 853, 363 S.E.2d 63, 64–65 (1987); *People v. Mendoza*, 234 Ill.App.3d 826, 175 Ill. Dec. 361, 369, 599 N.E.2d 1375, 1383 (1992); *State v. Izzo*, 623 A.2d 1277, 1280 (Me.1993); *State v. Morocco*, 99 N.C.App. 421, 393 S.E.2d 545, 548 (1990); *State v. Spencer*, 75 Ohio App.3d 581, 600 N.E.2d 335, 337 (1991); *Limonja v. Commonwealth*, 7 Va.App. 416, 375 S.E.2d 12, 15 (1988); *see State v. Bunts*, 867 S.W.2d 277, 280 (Mo.Ct.App.1993); *People v. Camarre*, 171 A.D.2d 1002, 569 N.Y.S.2d 223, 224 (1991).

5. Whether an officer's subjective intent is a relevant factor to be considered by the courts in assessing Fourth Amendment violations has been the subject of intense debate. *See* John M. Burkoff, *The Pretext Doctrine Returns After Never Leaving*, 66 U.Det.L.Rev. 363 (1989); James B. Haddad, *Pretextual Fourth Amendment Activity: Another Viewpoint*, 18 U.Mich.J.L.Ref. 639, 690 (1985) [hereinafter Haddad]; John M. Burkoff, *The Pretext Search Doctrine: Now You See It, Now You Don't*, 17 U.Mich.J.L.Ref. 523 (1984).

(1978)). Thus, "the fact that the officer does not have the state of mind which is hypothecated by the reasons which provided the legal justification for the officer's action does not invalidate the action taken, as long as the circumstances, viewed objectively, justify that action." *Scott v. United States,* 436 U.S. 128, 138, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168 (1978). In other words, the Fourth Amendment simply does not require an officer's state of mind to perfectly correspond to his or her legally justified actions. *See United States v. Cummins,* 920 F.2d 498, 501 (8th Cir.1990). As Justice White wisely observed:

> We might wish that policemen would not act with impure plots in mind, but I do not believe that wish a sufficient basis for excluding, in the supposed service of the Fourth Amendment, probative evidence obtained by actions—if not thoughts—entirely in accord with the Fourth Amendment and all other constitutional requirements.

*Massachusetts v. Painten,* 389 U.S. 560, 565, 88 S.Ct. 660, 663, 19 L.Ed.2d 770 (1968) (White, J., dissenting from dismissal of certiorari, joined by Harlan & Stewart, JJ.).

■ Accordingly, the majority of federal circuit courts that have addressed the issue and many state courts have held that a stop justified by probable cause or reasonable suspicion that a traffic offense has occurred is not invalid under the Fourth Amendment simply because the detaining officer made the stop for some reason unrelated to the traffic offense. *United States v. Ferguson,* 8 F.3d 385, 391 (6th Cir.1993) (traffic stop "is reasonable if there was probable cause [to believe that a traffic offense occurred], and it is irrelevant what else the officer knew or suspected about the traffic violator at the time of the stop"); *United States v. Mitchell,* 951 F.2d 1291, 1295 (D.C.Cir.1991) (the fact

that traffic stop was "a mere pretext for a search ... does not mean that a violation of the Fourth Amendment occurred"; courts must "look to objective circumstances in determining the legitimacy of police conduct under the Fourth Amendment, rather than an officer's state of mind"); *United States v. Maejia,* 928 F.2d 810, 814–15 (8th Cir.1991) (otherwise valid traffic stop based on "discrete and objectively reasonable grounds" does not "become unreasonable merely because the officer knows that the car is allegedly involved in the transportation of drugs"); *Cummins,* 920 F.2d at 501 (otherwise valid traffic stop based on probable cause "does not become unreasonable merely because the officer has intuitive suspicions that the occupants of the car are engaged in some sort of criminal activity"); *United States v. Hawkins,* 811 F.2d 210, 213 (3d Cir.1987) ("[T]he legality of a stop must be judged by the objective facts known to the seizing officers rather than by the justifications articulated by them."); *State v. Swanson,* 172 Ariz. 579, 838 P.2d 1340, 1343 (App. 1992); *People v. Miranda,* 17 Cal.App.4th 917, 21 Cal.Rptr.2d 785, 789 (Ct.App.1993); *State v. Tate,* 208 Ga.App. 117, 430 S.E.2d 9, 12–13 (1993) (distinguishing *Tarwid v. State,* 184 Ga.App. 853, 363 S.E.2d 63 (1987)); *State v. Myers,* 118 Idaho 608, 798 P.2d 453, 455 (1990); *Thanner v. State,* 93 Md.App. 134, 611 A.2d 1030, 1033 (1992); *People v. Haney,* 192 Mich.App. 207, 480 N.W.2d 322, 324 (1991); *State v. Olaiz,* 100 Or.App. 380, 786 P.2d 734, 736 (1990) (citing *State v. Tucker,* 286 Or. 485, 595 P.2d 1364, 1368 (1979)); *Garcia v. State,* 827 S.W.2d 937, 940–44 (Tex. Crim.App.1992); [6] *see also Scarbrough v. State,* 621 So.2d 996, 1005 (Ala.Crim.App. 1992); *State v. Everett,* 472 N.W.2d 864, 867 (Minn.1991). Despite its own language to the contrary, the court of appeals insists that

---

**6.** We note that some of these courts have "taken the view, often characterized as the 'could' test, that a stop is valid if the officer 'could' have stopped the car in question for a suspected traffic violation." *Ferguson,* 8 F.3d at 388 (listing cases). We agree with the Sixth Circuit that "some of the language utilized by the courts that subscribe to the 'could' test is sufficiently imprecise" to allow a traffic stop to be "justified merely by an after-the-stop determination that the officer theoretically could have stopped the car

for a traffic violation, although he did not notice at the time of the stop that a violation occurred." *Id.* at 391. For this reason, our analysis focuses on whether the stop was justified at its inception rather than on whether an officer "could" have stopped the driver for a traffic violation. Probable cause and reasonable suspicion determinations turn on the facts known to the officer at the time of the stop. Evidence discovered after the stop cannot be considered. *See State v. Baird,* 763 P.2d 1214, 1217 (Utah Ct.App.1988).

"the officer's subjective motivation is *not* the relevant inquiry" under the pretext doctrine. *Lopez*, 831 P.2d at 1047 (citing *Sierra*, 754 P.2d at 977). It reasons that pretext cases "turn on the *objective* question of whether a reasonable officer *would* have made the stop under the same circumstances, absent the illegal motivation" and that courts must look to " '*objective* evidence that [the officer] had no interest in investigating' " the traffic violation. *Id.* at 1047–48 (emphasis added) (quoting *Smith*, 799 F.2d at 710–11). On this point, the *Lopez* majority wrote:

> "[A] stop [i]s unreasonable not because the officer secretly hope[s] to find evidence of a greater offense, but because it [i]s clear that an officer would have been uninterested in pursuing the lesser offense absent that hope." In other words, "the proper basis of concern is not with *why* the officer deviated from the usual practice in this case but simply that he *did* deviate."

*Lopez*, 831 P.2d at 1047 (quoting *Guzman*, 864 F.2d at 1517); *Smith*, 799 F.2d at 709; 1 Wayne Lafave, *Searches and Seizures* § 1.4(e), at 94 (1987).

We are not convinced that this focus on usual police practice magically transforms the pretext doctrine into an objective assessment of an officer's conduct. " '[O]bjective evidence' of . . . general police practice is simply an aggregation of the subjective intentions of officers in the regions." *Ferguson*, 8 F.3d at 391. Furthermore, the usual practice of police officers in Salt Lake County may not represent the usual practice of police officers in Tooele County. Likewise, reasonable conduct for a narcotics officer may be an unreasonable breach of standard practice for a highway patrolman. Thus, under the pretext doctrine, the constitutionality of a traffic stop may turn on the county in which a defendant is detained or the primary duties of the detaining officer. Fourth Amendment protections cannot vary from county to county, nor can they be defined by the job description of the seizing officer. "[S]uch a case-by-case, police-department-by-police-department approach fails to provide the consistency and predictability officers need to meaningfully understand their obligations under the fourth amendment." *Mi-*

*randa*, 21 Cal.Rptr.2d at 791. More importantly, it shifts the focus of the court and counsel in a suppression hearing from the real inquiry: What facts justified the seizure at its inception? Finally, elevating general police practice to a constitutional standard ignores the possibility that police department policies and procedures may themselves be unconstitutional.

In addition, like the Sixth Circuit Court of Appeals, we have difficulty distinguishing between the subjective motivation of the officer and the " 'objective evidence' of the officer's actual interest in investigating the kind of offense for which he made the stop." *Ferguson*, 8 F.3d at 391. The court of appeals itself has had difficulty with this distinction. *Figueroa–Solorio*, 830 P.2d at 281 (opinion of Orme, J., joined by Billings, J.) (holding that "[i]n a case such as the instant one, where a police officer's actions are consistent with a legitimate course of conduct adopted after specific observations or experiences have brought valid concerns to the officer's attention, we believe the officer's uncontroverted subjective motivation should be afforded particular significance").

Our decision today should not be interpreted to mean that evidence of an officer's subjective intent or departure from standard police practice is never relevant to the determination of Fourth Amendment claims. We held in *State v. Hygh*, 711 P.2d 264 (Utah 1985), that the inventory exception to the warrant requirement "does not apply when the inventory is merely 'a pretext concealing an investigatory police motive.' " *Id.* at 268 (quoting *South Dakota v. Opperman*, 428 U.S. 364, 376, 96 S.Ct. 3092, 3100, 49 L.Ed.2d 1000 (1976)). In this context, compliance with or departure from police department procedures is particularly relevant in determining whether an officer conducted the inventory search pretextually. *Id.* at 269–70.

Likewise, an officer's subjective suspicions unrelated to the traffic violation for which he or she stops a defendant can be used by defense counsel to show that the officer fabricated the violation. *State v. Arroyo*, 796 P.2d 684 (Utah 1990). The more evidence that a detention was motivated by police suspicions unrelated to the traffic of-

fense, the less credible the officer's assertion that the traffic offense occurred.[7] If the trial court finds no traffic violation, then the stop is not justified at its inception and is therefore unconstitutional.

 We have also held that a pretextual police purpose is one factor relevant to the question of attenuation. *State v. Thurman*, 846 P.2d 1256, 1263 (Utah 1993). Once a Fourth Amendment violation is established, courts must often decide "whether a [defendant's] consent is sufficiently attenuated from prior police illegality to permit introduction of the resulting evidence." *Id.* One factor relevant to this determination is the "purpose and flagrancy" of the Fourth Amendment violation. We wrote in *Thurman:*

> [I]f the police had no "purpose" in engaging in the misconduct ... suppression would have no deterrent value. At the other extreme, if the purpose of the misconduct was to achieve the consent, suppression of the resulting evidence clearly will have a deterrent effect and further analysis will rarely be required. Similarly, if the misconduct is flagrantly abusive, there is a greater likelihood that the police engaged in the conduct as a pretext for collateral objectives, and suppressing the resulting evidence will have a greater likelihood of deterring similar misconduct in the future.

*Id.* at 1263–64 (citations omitted). Thus, for purposes of attenuation analysis, an officer's subjective motivation underlying a Fourth Amendment violation is relevant to decide whether suppression remains an appropriate sanction.

### 3. The Pretext Stop Doctrine Discourages Equal Protection of the Law

In the instant case, the court of appeals determined that the pretext doctrine "implicates equal protection concerns and policies." *Lopez*, 831 P.2d at 1045. It wrote:

> We cannot ignore the reality that many pretext stop cases involve minorities and that in some cases one of the articulated reasons for the. stop was that the occupants were Hispanic.... To permit police officers to use any minor traffic violation as a pretext to stop a vehicle encourages the selective enforcement of traffic regulations against minorities or "suspicious" classes, such as those with an unorthodox appearance or out-of-state license plates.

*Id.* at 1045–46. Based on these equal protection concerns, the court determined that the pretext doctrine was necessary to protect "the privacy of *all* individuals by requiring that police be consistent in their enforcement of traffic regulations." *Id.* (emphasis added).

We are not convinced that the pretext doctrine promotes equal protection and consistent enforcement of the law. As applied, the doctrine may insulate suspicious citizens from liability for violating the traffic laws.[8] The United States Supreme Court disapproved of this unequal enforcement of the law in *United States v. Villamonte–Marquez*, 462 U.S. 579, 103 S.Ct. 2573, 77 L.Ed.2d 22 (1983). In that case, customs officers boarded a forty-foot sailboat in the Calcasieu River Ship Channel to inspect the ship's documents as authorized by 19 U.S.C. § 1581(a) and discovered 5800 pounds of marijuana. Seeking to suppress the marijuana, the defendant

---

**7.** Admittedly, defense counsel must pursue this course with caution. By arguing that the officer's suspicions of a more serious crime motivated the detention, defense counsel may not only persuade the court that the officer fabricated the traffic offense, but also convince the court that the officer had reasonable suspicion to stop the defendant for the more serious crime.

**8.** Professor Haddad's observations on this point illustrate the problem:

> Consider how a defense counsel tries to establish an improper police motive.... Suppose, for example, that counsel theorizes that an officer stopped her speeding client not to enforce the traffic code but to investigate a recent robbery. The defense must offer evidence that the officer knew some facts that suggested that a traffic stop might yield evidence of a robbery. The more suspicious data the defense can show that the officer had, the more likely the defense can establish that the true motive for the stop was unrelated to enforcement of the law against speeding.
>
> Picture, then, the officer who observes two speeding vehicles.... [T]he officer can stop the ordinary speeder but not the speeder whom he also has reason to suspect of more serious wrongdoing.

Haddad at 690.

argued that the documents inspection was a pretext "because the customs officers were accompanied by a Louisiana state policeman, and were following an informant's tip that a vessel in the ship channel was thought to be carrying marijuana." *Id.* at 584 n. 3. The Supreme Court dismissed this argument, stating, " 'We would see little logic in sanctioning such [document] examinations of ordinary, unsuspect vessels but forbidding them in the case of suspected smugglers.' " *Id.* (quoting *United States v. Arra*, 630 F.2d 836, 846 (1st Cir.1980)).

Admittedly, the pretext doctrine permits both the ordinary speeder and the speeder suspected of robbery to be stopped and cited for speeding. Thus, defendant is correct in his assertion that the doctrine "does not immunize anyone from the traffic laws." Nevertheless, the doctrine still offends the very equal protection policies it is touted to protect, because it permits the ordinary speeder to be successfully prosecuted for robbery based on evidence found in plain view during the stop, while the speeder suspected of robbery with similar evidence in plain view goes free.

At best, this is a misallocation of police resources because we "want officers to maximize their resources (including their activities within the Fourth Amendment) in pursuit of serious offenders." Haddad at 690. As Justice Brennan wrote, "[I]t would appear a strange test as to whether a search which turns up criminal evidence is unreasonable, that the search is more justifiable the less there was antecedent probable cause to suspect the defendant of crime." *Abel v. United States*, 362 U.S. 217, 253, 80 S.Ct. 683, 704, 4 L.Ed.2d 668 (1960) (Brennan, J., dissenting). More importantly, however, the pretext doctrine offends equal protection by conferring upon suspected citizens greater Fourth Amendment protection against unreasonable searches and seizures than that enjoyed by nonsuspected citizens. Thus, we fail to see how the pretext doctrine operates to protect "all individuals." *Lopez*, 831 P.2d at 1046. If we are to impose restrictions on the Fourth Amendment power to stop a driver for minor traffic violations, then those re-strictions must "benefit all of the citizenry, not just those especially suspected of criminal activity." Haddad at 690. For these reasons, we cannot adopt the pretext doctrine as a means of enforcing the "uniform operation" of the law. Utah Const. art. I, § 24.

## CONCLUSION

The court of appeals erred in basing its decision in the instant case on whether a " 'reasonable ... officer, in view of the totality of the circumstances confronting him or her, would have stopped' the [defendant] for the traffic violation" absent a desire to search for evidence of a more serious crime. *State v. Lopez*, 831 P.2d 1040, 1044 (Utah Ct.App. 1992) (quoting *State v. Sierra*, 754 P.2d 972, 978 (Utah Ct.App.1988)). If reasonable in scope, a traffic stop based on probable cause or reasonable suspicion that the driver has violated "any one of the multitude of applicable traffic and equipment regulations" is lawful under the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 661, 99 S.Ct. 1391, 1400, 59 L.Ed.2d 660 (1979). "[I]t is irrelevant what else the officer knew or suspected about the traffic violator at the time of the stop. It is also irrelevant whether the stop in question is sufficiently ordinary or routine according to the general practice of the police department or the particular officer making the stop." *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir.1993). In short, as applied to traffic stops, we reject the pretext stop doctrine in favor of the rule of law articulated in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). Furthermore, because the pretext doctrine is unsound, we refuse to adopt it under article I, section 14 and article I, section 24 of the Utah Constitution.

The court of appeals' decision is vacated, and its reversal of the suppression order is affirmed on other grounds. The case is remanded for additional findings and conclusions as directed in this opinion.

ZIMMERMAN, C.J., STEWART, Associate C.J., DURHAM, J., and NORMAN H. JACKSON, Court of Appeals Judge, concur.

HALL, Justice, did not participate herein; JACKSON, Court of Appeals Judge, sat.