2005 UT App 41

**STATE of Utah, Plaintiff and Appellee,**

v.

**Derek Chad CHISM, Defendant and Appellant.**

**No. 20030412–CA.**

Court of Appeals of Utah.

Feb. 3, 2005.

Margaret P. Lindsay, Provo, for Appellant.

Mark L. Shurtleff, Atty. Gen., and Kenneth A. Bronston, Asst. Atty. Gen., Salt Lake City, for Appellee.

Before BILLINGS, P.J., DAVIS, and THORNE, JJ.

## OPINION

THORNE, Judge:

¶ 1 Derek Chad Chism appeals his conviction for attempted possession of cocaine, a class A misdemeanor. *See* Utah Code Ann. § 58–37–8(2)(A)(i) (2002). He argues that the trial court erred by denying his motion to suppress evidence, contending that the arresting officer violated his Fourth Amendment rights by detaining him to run a computer check on his identification without reasonable suspicion that he was engaged in criminal activity. We reverse.

## BACKGROUND

¶ 2 On June 2, 2001, Deputy Utah County Sheriff James Randall was patrolling Redwood Road north of Highway 73 in Utah County. At approximately midnight, Randall stopped a vehicle after he observed it following another vehicle too closely. Chism was a passenger in the back seat of the stopped vehicle.

¶ 3 Upon approaching the stopped vehicle, Randall noticed the smell of tobacco smoke coming from inside the vehicle and observed two packs of cigarettes on the dashboard. Randall suspected that the five occupants of the car, including Chism, "appeared to be juveniles and not old enough to possess tobacco." Randall asked the vehicle's occupants to stick out their tongues, and observed a brown residue on some of their tongues. This indicated to Randall that these individuals had been using tobacco.[1] Randall asked the occupants about their tobacco use and they all admitted to smoking tobacco.

¶ 4 Randall then asked everyone in the vehicle for identification "so [he] could be sure that the occupants of the vehicle would be old enough to be in possession of tobacco." Each of the five produced identification.[2] Chism produced a driver license indicating that he was nineteen years old, of age to possess tobacco in Utah. *See* Utah Code Ann. § 76–10–105(1) (2003) ("Any 18 year old person who . . . has in his possession any cigar, cigarette, or tobacco in any form is guilty of a class C misdemeanor[.]"). Randall testified that the picture on the license appeared to be Chism's, and that the license did not appear to have been altered. Nevertheless, Randall took all five identification cards back to his vehicle to "verify that the information on the identification they gave [him] was valid." Randall later testified that he did this because the identifications could have been false and that it is his standard procedure to verify identifications through a computer check.

¶ 5 Randall ran a computer check on the identification cards, from which he learned that Chism had a warrant out for his arrest.[3] Randall arrested Chism on the warrant and proceeded to search the area of the vehicle where he had been seated. Randall found a backpack that Chism admitted was his. A search of the backpack revealed two baggies, one containing a white crystalline substance ultimately determined to be cocaine, and another that Chism admitted he used to store marijuana. Chism admitted ownership of both baggies.

---

1. In *State v. Hechtle*, 2004 UT App 96, ¶ 13, 89 P.3d 185, we rejected the State's unsupported assertion that recent marijuana usage causes a green tongue. Similarly, we see no support in the record of this case to conclude that a brown tongue is indicative of recent tobacco use. The issue is irrelevant in this case, however, as Chism does not challenge the tongue color evidence and readily admitted to Randall that he had been using tobacco.

2. The record does not contain the ages of the vehicle's other occupants, but inferentially indicates that they were all old enough to possess tobacco.

3. There was some dispute between the parties as to whether the computer check could be characterized as a warrants check. Because our decision today rests on the lack of justification for Chism's detention, rather than what happened during that detention, the exact characterization of the computer check is irrelevant to the ultimate result.

¶ 6 The State charged Chism with possession of cocaine and drug paraphernalia. Chism moved to suppress the evidence obtained pursuant to his arrest, arguing that Randall violated his Fourth Amendment rights by detaining him to run a computer check without reasonable suspicion that he was engaged in criminal activity. The trial court denied the motion, finding that Randall had identified "specific and articulable facts" supporting his suspicion that Chism was illegally possessing tobacco.[4] The court found that "[Randall's] subjective observation of [Chism's] age conflicted with the identification presented," and that the brief detention while the identification was verified was reasonable in light of that disparity.

¶ 7 After the denial of his motion to suppress, Chism entered a *Sery* plea, pleading guilty to one count of attempted possession of cocaine but preserving his right to appeal the denial of his motion to suppress. *See State v. Sery*, 758 P.2d 935, 938–39 (Utah Ct.App.1988). He now brings this appeal.

## ISSUE AND STANDARD OF REVIEW

¶ 8 Chism argues that he was illegally seized when Randall retained his driver license to run a computer check on it without having reasonable suspicion that he was committing a crime. "If a case involves a mixed question of fact and law, we afford some measure of discretion to the district court's application of the law." *State v. Hansen*, 2002 UT 125, ¶ 26, 63 P.3d 650.[5] "The measure of discretion afforded varies, however, according to the issue being reviewed." *Id.*

¶ 9 "When a case involves the reasonableness of a search and seizure, 'we afford little discretion to the district court because there must be state-wide standards that guide law enforcement and prosecutorial offi-

cials.' " *State v. Warren*, 2003 UT 36,¶ 12, 78 P.3d 590 (quoting *Hansen*, 2002 UT 125 at ¶ 25, 63 P.3d 650). "State-wide standards also help ensure different trial judges will reach the same legal conclusion in cases that have little factual difference." *Id.* (quoting *Hansen*, 2002 UT 125 at ¶ 25, 63 P.3d 650). The supreme court recently clarified that it considers the standard applied in *Hansen* and *Warren* to be synonymous with a "non-deferential" review for "correctness." *State v. Brake*, 2004 UT 95, ¶ 15, 103 P.3d 699.

## ANALYSIS

¶ 10 The only issue before the court is whether Randall's detention of Chism to conduct a computer check on his identification violated the Fourth Amendment of the United States Constitution.[6] Randall's only basis for detaining Chism was the suspicion that Chism was underage to possess tobacco. Chism produced identification that, if valid, should dispel that suspicion in a reasonable person. Randall articulated no objective facts supporting a reasonable belief that Chism's identification was false or unreflective of his true age. Accordingly, Randall had no reasonable basis to further detain Chism after he presented identification.

¶ 11 Three levels of constitutionally permissible encounters between police officers and citizens exist:

"(1) an officer may approach a citizen at anytime [sic] and pose questions so long as the citizen is not detained against his will; (2) an officer may seize a person if the officer has an 'articulable suspicion' that the person has committed or is about to commit a crime; however, the 'detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop'; (3) an officer may arrest a sus-

---

4. The court articulated the facts supporting the detention as "1) the odor of tobacco; 2) the tobacco in view on the dashboard; 3) the apparent youth of the Defendant; 4) the discoloration of the Defendant's tongue; [and] 5) the identification presented by the Defendant indicating an age exceeding age 19."

5. "A mixed question involves 'the application of law to fact or, stated more fully, the determination of whether a given set of facts comes within

the reach of a given rule of law.' " *State v. Hansen*, 2002 UT 125, ¶ 26 n. 3, 63 P.3d 650 (quoting *State v. Pena*, 869 P.2d 932, 936 (Utah 1994)).

6. The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV.

pect if the officer has probable cause to believe an offense has been committed or is being committed."

*Salt Lake City v. Ray,* 2000 UT App 55, ¶ 10, 998 P.2d 274 (alteration in original) (citations omitted). The undisputed facts of this case place it in the second category, an investigatory detention requiring reasonable suspicion of wrongdoing. *Cf. State v. Cripps,* 533 N.W.2d 388, 391 (Minn.1995) (determining, in the context of alcohol consumption, that a police officer's request for age identification is more than a simple inquiry into identity and constitutes a seizure).

¶ 12 An officer may initiate a so-called level two stop "when 'specific and articulable facts and rational inferences ... give rise to a reasonable suspicion a person has or is committing a crime.' " *State v. Hansen,* 2002 UT 125, ¶ 35, 63 P.3d 650 (quoting *United States v. Werking,* 915 F.2d 1404, 1407 (10th Cir.1990) (alteration in original)). The reasonableness of a level two stop is "evaluated objectively according to the totality of the circumstances." *State v. Warren,* 2003 UT 36, ¶ 14, 78 P.3d 590; *see also Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). An officer "must be able to point to specific facts which, considered with rational inferences from those facts, reasonably warrant the intrusion." *Warren,* 2003 UT 36 at ¶ 14, 78 P.3d 590. Officers "must 'diligently pursue a means of investigation that is likely to confirm or dispel their suspicions quickly,' " and it is unlawful to continue the detention after reasonable suspicion is dispelled. *State v. Bissegger,* 2003 UT App 256, ¶¶ 19–20, 76 P.3d 178 (emphasis and alterations omitted) (quoting *State v. Lopez,* 873 P.2d 1127, 1132 (Utah 1994)).

¶ 13 Chism argues that *State v. Johnson,* 805 P.2d 761 (Utah 1991), controls the disposition of this matter. In *Johnson,* the defendant was the sole passenger in a vehicle that was stopped for an equipment violation. *See id.* at 762. The driver could not produce the vehicle's registration and the name on her driver license did not match that of the registered owner. *See id.* These facts led the investigating officer to suspect that the car was stolen. *See id.* Based only on this suspicion, the officer requested John-

son's identification and ran a warrants check on both passenger and driver. *See id.* The warrants check revealed an arrest warrant for Johnson, and a search of her backpack incident to her subsequent arrest produced illegal drugs. *See id.* The Utah Supreme Court reversed Johnson's drug conviction, reasoning that her detention for a warrants check went "beyond what was reasonably related in scope to the traffic stop [and] was not justified by an articulable suspicion that defendant had committed a crime." *Id.* at 764.

¶ 14 The State's argument suggests that under *State v. Lopez,* 873 P.2d 1127 (Utah 1994), a detention for a computer check is reasonable any time that an officer has reasonable suspicion to temporarily detain a person and request identification. However, *Lopez* determined only that a warrants check on a driver does not exceed the permissible bounds of a traffic stop if it does not significantly extend the period of detention beyond that "reasonably necessary to request a driver's license and valid registration and to issue a citation." *Id.* at 1133. Outside the traffic stop context, the permissibility of a warrants check during any particular detention must still be determined on a case-by-case basis. *See id.* (intimating that "a warrants check on a passenger could ... be justified [if at all, only] by specific articulable facts"). And, even within the traffic stop context, the question of whether the check "significantly extend[s]" the detention is no mere formality. *See id.* at 1134 (remanding the matter with instructions that the trial court determine whether the warrants check significantly extended the driver's period of detention).

¶ 15 Read together, *Johnson* and *Lopez* describe a straightforward analysis that applies equally to drivers and nondrivers alike. No person may be detained except upon reasonable suspicion, and the scope of the detention must be limited to addressing the articulated grounds for the stop. *See Lopez,* 873 P.2d at 1132–33; *Johnson,* 805 P.2d at 764. Investigative acts that are not reasonably related to dispelling or resolving the articulated grounds for the stop are permissible only if they do "not add to the delay

already lawfully experienced" and do "not represent any further intrusion on [the detainee's] rights." *People v. McGaughran*, 25 Cal.3d 577, 159 Cal.Rptr. 191, 601 P.2d 207, 211 (1979), *cited with approval in Lopez*, 873 P.2d at 1133. Assuming that reasonable suspicion supporting a detention initially exists, the detention must cease at the point where the suspicion becomes unreasonable. *See Bissegger*, 2003 UT App 256 at ¶¶ 19–20, 76 P.3d 178 (determining that continued detention of motorist on suspicion of intoxicated driving after successful performance of field sobriety tests was unlawful, i.e., unreasonable). A computer check of public records on a driver during an ordinary traffic stop comports with these rules. There is no additional intrusion on the driver, who must already produce his driver license and submit to confirmation of his or her driving privileges.[7] Nor is there a significant extension of the period of detention beyond that which the driver is already lawfully subjected to in order to verify continuing driving privileges.

¶ 16 Here, the initial vehicle stop was justified by Randall's observation of a traffic violation. However, the focus of the stop immediately shifted away from the driver's operation of the vehicle and onto the age of the car's occupants. This shift in focus was based solely on Randall's subjective impression that Chism and the other vehicle occupants were not old enough to possess the tobacco found in the car. Assuming that Chism's physical appearance justified some individualized suspicion of underage tobacco possession,[8] any justification for further detention was dispelled as soon as Chism presented a state-issued driver license under circumstances not amounting to a reasonable basis to question its legitimacy.

¶ 17 Randall testified that, aside from conflicting with his subjective impression of Chism's age, Chism's driver license appeared to be valid and the picture on the license appeared to be Chism's. Randall provided the court with no specific, articulable facts supporting his unwillingness to accept the date of birth reflected on Chism's license. Absent a reasonable and articulable basis to suspect fraudulent or false identification,[9]

---

7. A driver license is proof that driving privileges were extended to the licensee on the date of issue. But those privileges are subject to revocation, which cannot be determined by examining the driver license itself. Some further procedure, such as a computer check, is necessary to determine whether the status of driving privileges has changed since the issuance of the license.

8. Because Chism does not raise the issue, we do not address whether this shift in focus, or Randall's subsequent detention of and request for identification from each of the car's occupants, was justified in this case. Looking solely at the record, Randall did not articulate a single objective fact to support his subjective impression of Chism's age, and we fail to see how such an unsupported impression could be characterized as reasonable suspicion. *But see State v. Bean*, 869 P.2d 984, 988 (Utah Ct.App.1994) (finding reasonable suspicion of age-based curfew and alcohol violations solely on officer's opinion that defendant "appeared to be very young"). Nevertheless, the parties did not brief or argue this issue below or on appeal, and we deem it beyond the proper scope of this opinion.

9. The specific facts of this case are closely analogous to cases such as *United States v. McSwain*, 29 F.3d 558 (10th Cir.1994). In *McSwain*, a Utah state trooper observed a vehicle with no license plates displaying a temporary registration sticker in its rear window. *See id.* at 560. Unable to discern the expiration date of the registration sticker on the moving vehicle, the trooper performed a vehicle stop to investigate the vehicle's registration status. *See id.* As the trooper approached the vehicle on foot, he observed that the registration sticker "was valid and had not expired." *Id.* Nevertheless, the trooper questioned the driver, McSwain, ran a computer check on his identification, and ultimately searched the vehicle with McSwain's consent, discovering drugs and a firearm. *See id.*

The Tenth Circuit Court of Appeals reversed McSwain's conviction, holding that the results of the search should have been suppressed. *See id.* at 564. The court summarized:

[The trooper] stopped Mr. McSwain for the sole purpose of ensuring the validity of the vehicle's temporary registration sticker. Once [the trooper] approached the vehicle on foot and observed that the temporary sticker was valid and had not expired, the purpose of the stop was satisfied. [The trooper's] further detention of the vehicle to question Mr. McSwain about his vehicle and travel itinerary and to request his license and registration exceeded the scope of the stop's underlying justification.

*Id.* at 561. Cases from other jurisdictions analyzing similar fact patterns have reached similar conclusions. *See, e.g., State v. Hickman*, 491 N.W.2d 673, 675 (Minn.Ct.App.1992) (holding that officer's observation of valid temporary tag dispelled reasonable suspicion of expired regis-

Chism's state-issued driver license dispelled the *reasonableness* of any suspicion that Randall may have had about Chism's age. Accordingly, we cannot agree with the trial court that Randall's continuing detention of Chism to probe further into the issue of his age was the product of a reasonable suspicion.[10]

¶ 18 We are not persuaded by the State's argument that Randall's subjective impression of Chism's youth suggested that his identification was false or inaccurate. To the contrary, one of the primary practical purposes of identification in modern society is to provide proof of age in age-restricted contexts such as the purchase and use of alcohol or tobacco. *See, e.g.,* Utah Code Ann. § 32A–1–105(39) (Supp.2004) (defining proof of age for purposes of the purchase of alcohol). The underlying premise of society's reliance on identification cards in these contexts is that state-issued identification is reliable and presumptively establishes the bearer's age despite his or her somewhat younger physical appearance. *See, e.g.,* Utah Code Ann. §§ 53–3–806 (2002) (requiring distinct identification cards for those underage to purchase alcohol or tobacco), 77–39–101(3) (2003) (prohibiting the use of false identification in alcohol and tobacco sales enforce-

ment); Utah R. Evid. 902 (listing types of self-authenticating evidence).

¶ 19 This statutory and societal reliance on state-issued identification in age-restricted contexts persuades us that such identification provides what amounts to a rebuttable presumption of the bearer's true age. While a discrepancy between an identification card and an officer's observations might support a reasonable suspicion that the identification is false, the burden remains on the State to support that suspicion with specific articulable facts, e.g., significant differences in facial features, height, or other identifying characteristics. When the sole questioned characteristic is age, it is incumbent upon the State to provide such facts as would warrant a reasonable person to conclude that an identification card has been falsified, or that the bearer has a different age or identity than that reflected by the identification presented.

¶ 20 We do not speculate today as to what facts might support a reasonable distinction between one who has attained a particular age and one who has not.[11] At the same time, we recognize that a significant and articulable disparity between a person's apparent age and the birth date on his or her identification may give rise to a reasonable suspicion that the identification is false. In the present case, Randall provided no objec-

tration); *Ohio v. Chatton,* 11 Ohio St.3d 59, 463 N.E.2d 1237, 1240 (1984) (holding that officer's observation of valid temporary tag dispelled reasonable suspicion of operating unlicensed vehicle); *cf. McGaughey v. State,* 37 P.3d 130, 136 (Okla.Crim.App.2001) ("The issue presented is whether an officer who stops a vehicle based upon a reasonable but mistaken belief [of a violation] can continue the traffic stop after the officer realizes his mistake, where no other justification for continuing the stop has yet emerged.").

10. We note that there is no reason to believe that Randall's computer confirmation of Chism's driver license information would have, in fact, dispelled his subjective belief that Chism was underage. Given Randall's apparently firm belief that Chism was underage, he could just as well have concluded that Chism used false documentation to obtain a license that state records would identify as valid, or that a clerical or computer error resulted in Chism's license and state records both showing the same incorrect date of birth.

We also note that computer checks to confirm driving privileges during traffic stops are justified in large part because driving privileges can be

revoked. Revocation is not reflected on the physical driver license presented to an officer by a driver. By contrast, a person's date of birth is not subject to change after the issuance of a driver license or other identification.

11. In *State v. Shreve,* the supreme court held that physical appearance alone could not justify a finding beyond a reasonable doubt that the persons to whom the defendant had sold marijuana were under the age of eighteen. *See* 30 Utah 2d 100, 514 P.2d 216, 216 (1973). While the present case involves only reasonable suspicion, *Shreve* suggests that the value of physical appearance as an indicator of age decreases as one leaves the extremes of youth and old age. *See id.; see also* 2 Wigmore on Evidence § 222 (Chadbourn rev. 1979) ("[C]orporal appearances are *approximately* an index of the *age* of their bearer, particularly for the marked extremes of old age and youth." (first emphasis added)). This suggests that physical appearances may have little value in making close age determinations, such as distinguishing between those who are eighteen and nineteen years of age.

tive facts to support his suspicion that Chism was younger than his identification stated. Without such supporting facts, Randall's theory that Chism's identification was false can only be characterized as an " 'inchoate and unparticularized suspicion or "hunch" ' " not justifying additional detention. *State v. Johnson,* 805 P.2d 761, 764 (Utah 1991) (quoting *Terry v. Ohio,* 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).

## CONCLUSION

¶ 21 Randall's only ground for detaining Chism was his suspicion that Chism was not old enough to possess tobacco. Chism presented Randall with a state-issued driver license that indicated otherwise. Because Randall did not identify any specific, articulable facts to support a reasonable suspicion that Chism had falsified his license or was otherwise younger than his license indicated, we cannot agree with the trial court that it was objectively reasonable for Randall to further detain Chism for the tobacco offense.

¶ 22 With no continuing reasonable suspicion, Randall's detention of Chism to further investigate the validity of his identification, and the resulting arrest and search, were all unlawful. Accordingly, we reverse the trial court's order denying Chism's motion to suppress the search results, vacate Chism's conviction, and remand this matter for further proceedings consistent with the terms of this opinion.

¶ 23 WE CONCUR: JUDITH M. BILLINGS, Presiding Judge and JAMES Z. DAVIS, Judge.