2005 UT App 539

**STATE of Utah, Plaintiff and Appellee,**

v.

**Mitchell WORWOOD, Defendant and Appellant.**

**No. 20040701–CA.**

Court of Appeals of Utah.

Dec. 15, 2005.

Scott P. Card and Jennifer Gowans, Fillmore Spencer LLC, Provo, for Appellant.

Mark L. Shurtleff, Atty. Gen., and J. Frederic Voros Jr., Asst. Atty. Gen., Salt Lake City, for Appellee.

Before Judges DAVIS, McHUGH, and THORNE.

## OPINION

DAVIS, Judge:

¶ 1 Mitchell Worwood appeals the district court's ruling denying his motion to suppress evidence taken during sobriety tests. We affirm.

## BACKGROUND

¶ 2 On June 20, 2003, Korey Wright, an off-duty Utah Highway Patrol trooper, and his friend, Skyler Fautin, were driving Wright's pickup truck and horse trailer on a dirt road out of Deep Canyon in Juab County when they encountered a white pickup truck parked in the middle of the road. At the time, Worwood, the driver of the truck, had exited the vehicle, but soon reentered and drove it to the side of the road to allow Trooper Wright and his truck to pass. Trooper Wright noticed a large wet spot in the road, a beer can, and later an ice cooler that apparently had been recently emptied.

¶ 3 Trooper Wright pulled his vehicle alongside Worwood's to speak to him. During the conversation, Trooper Wright noted

that Worwood, who was sitting in the driver's seat, had bloodshot eyes and slurred speech. Trooper Wright exited his vehicle to continue the conversation and testified that he smelled alcohol on Worwood's breath.[1] All of these signs led Trooper Wright to believe that Worwood was likely intoxicated and could not safely operate a vehicle. Trooper Wright told Worwood that he would not allow him to drive until he had been checked out by a police officer. Worwood appeared to recognize that Trooper Wright was a law enforcement officer and complied with the request. Because Trooper Wright did not have a telephone or other means of communication, he instructed Fautin to drive Worwood's vehicle to a nearby dairy and call for an officer to respond at Trooper Wright's house. Trooper Wright then asked Worwood to accompany him there, to which Worwood agreed, and Trooper Wright drove him approximately a mile and a half to his house. There, they met an on-duty trooper who performed a field sobriety test, determined there was probable cause to arrest, and transported Worwood to the Juab County Jail where further tests revealed a breath alcohol concentration of .248.[2]

¶ 4 Before trial, Worwood moved to suppress the evidence obtained from the sobriety test, claiming it was obtained by means of an illegal seizure. The trial court held an evidentiary hearing and found that Trooper Wright had noticed signs of intoxication early in the encounter, including bloodshot eyes, slurred speech, and "[a]fter talking with Mr. Worwood at a closer proximity, Trooper Wright also smelled the odor of alcohol." The trial court also found that testing Worwood at another location was necessary because "it was more fair to the defendant to conduct the field sobriety test in a location that would allow the officer to obtain accu-

rate test results." The trial court denied the motion, concluding that under these circumstances Trooper Wright had a reasonable suspicion to execute a level-two investigatory detention and that driving Worwood to Trooper Wright's house was a reasonable extension of that detention. We agree and affirm.

## ISSUES AND STANDARD OF REVIEW

¶ 5 On appeal, Worwood claims that the trial court erred in denying his motion to suppress because (1) Trooper Wright did not have a reasonable suspicion sufficient to effect an investigatory detention and (2) when Trooper Wright drove him to Trooper Wright's house to perform the field sobriety test, the encounter became a de facto arrest for which there was no probable cause. We review the trial court's legal basis for denying Worwood's motion for correctness without deference to the trial court's application of the law to the facts. *See State v. Brake*, 2004 UT 95, ¶ 15, 103 P.3d 699.

## ANALYSIS

¶ 6 Worwood first contends that Trooper Wright did not have sufficient grounds to execute an investigatory detention. "[I]t is settled law that 'a police officer may detain and question an individual when the officer has reasonable, articulable suspicion that the person has been, is, or is about to be engaged in criminal activity.'" *State v. Markland*, 2005 UT 26, ¶ 10, 112 P.3d 507 (quoting *State v. Chapman*, 921 P.2d 446, 450 (Utah 1996)). Although the officer's suspicion must be based on "'specific and articulable facts and rational inferences,'" it need not be supported by probable cause or even a preponderance of the evidence. *Id.* (quoting *United States v. Werking*, 915 F.2d 1404,

---

1. Worwood claims on appeal that Trooper Wright smelled alcohol on Worwood's breath only after Worwood was seated in Trooper Wright's pickup truck, but fails to challenge the trial court's finding that Trooper Wright smelled the odor of alcohol on Worwood's breath "[a]fter talking with Mr. Worwood at a closer proximity" but before asking him to ride with him in the truck. *See State v. Arguelles*, 2003 UT 1, ¶ 67, 63 P.3d 731 (noting that a trial court's finding of fact is conclusive unless appellant proves the

trial court committed clear error and marshals all the record evidence in support of and against the finding).

2. The arresting officer testified that Worwood had a blood alcohol content of ".248 liters," which presumably means a level of .248 grams per 210 liters of breath. *See* Utah Code Ann. § 41–6–44(2)(c) (Supp.2002) (renumbered as Utah Code Ann. § 41–6a–502 (2005)).

1407 (10th Cir.1990)). In reviewing an officer's conduct under the Fourth Amendment, we consider the facts in their totality and " 'judge the officer's conduct in light of common sense and ordinary human experience and ... accord deference to an officer's ability to distinguish between innocent and suspicious actions.' " *Id.* at ¶ 11 (alteration in original) (quoting *United States v. Williams,* 271 F.3d 1262, 1268 (10th Cir.2001)).

¶ 7 Here, Trooper Wright effected a level-two investigative detention after seeing an empty beer can, a large wet spot, and later an empty cooler. He also noticed signs that Worwood was intoxicated, including bloodshot eyes, slurred speech, and the odor of alcohol on his breath. These indicators, combined with the fact that Worwood apparently intended to continue driving, justify the reasonable and common sense inference that Worwood had been or was about to drive a motor vehicle while intoxicated.

¶ 8 Second, Worwood contends that when Trooper Wright drove him to another location to perform a field sobriety test he exceeded the scope of the investigative detention and effected a de facto arrest. After commencing an investigative detention, officers must " ' "dilligently [pursue] a means of investigation that [is] likely to confirm or dispel their suspicions quickly, during which time it [is] necessary to detain the defendant." ' " *State v. Lopez,* 873 P.2d 1127, 1132 (Utah 1994) (alterations in original) (citations omitted). Defendant correctly observes that an investigative detention may become a de facto arrest requiring probable cause when police transport a suspect to a new location. *See, e.g., Dunaway v. New York,* 442 U.S. 200, 216, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). However, while courts acknowledge that the precise point at which an investigative detention becomes a de facto arrest is not clear, an important factor in determining when an arrest has occurred is whether the degree of intrusion is not "reasonably related to the facts and circumstances at hand." *State v. Leonard,* 825 P.2d 664, 669–70 (Utah Ct.App.1991). We recognize the " 'important need to allow authorities to graduate their responses to the demands of any particular situation,' " and the fact that we could con-

ceive of less intrusive means to resolve a suspicion does not alone render an officer's efforts to resolve the suspicion unreasonable. *United States v. Sharpe,* 470 U.S. 675, 686–87, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985) (citation omitted). Rather, we consider only whether the officer's failure to pursue such other means was unreasonable. *See id.*

¶ 9 We appreciate the concerns expressed by our colleague in his dissent and note that Trooper Wright's mode of investigation would be permissible only in the rarest of circumstances and that this case ultimately turns on the unique set of facts it presents, albeit on a sparse record. Upon review of the known facts, we cannot conclude that an off-duty law enforcement officer exceeds the permissible scope of an investigatory detention when he transports a driver he suspects to be intoxicated a short distance from an uninhabited area to meet an on-duty officer for further investigation. Trooper Wright testified that he was returning from horseback riding in a pickup truck with an attached horse trailer, had no means of communication, and was not equipped to make a formal arrest. Trooper Wright indicated to Worwood that the detention was temporary and for investigatory purposes by explaining that he could not allow him to drive "until he had been checked out by an officer." Although Trooper Wright may have been able to perform a sufficient field sobriety test on Worwood at the point of the initial encounter in Deep Canyon and possibly to transport him to the Juab County Jail, it was not unreasonable for him to drive Worwood to a nearby location in the town to permit an on-duty officer to perform a field sobriety test and, if necessary, effect a formal arrest. Further, the trial court found that conducting the sobriety test in town would "allow the officer to obtain accurate test results." Worwood has not challenged this finding and has not alleged that the results of the sobriety test would have been substantially different if conducted minutes earlier. Finally, there is no evidence that the change of location significantly extended the encounter, and the record gives no indication that under these unique circumstances Trooper Wright was motivated by any purpose other than quickly

and effectively resolving his suspicion that Worwood was intoxicated.

¶ 10 Accordingly, we affirm.

¶ 11 I CONCUR: CAROLYN B. McHUGH, Judge.

THORNE, Judge (dissenting):

¶ 12 I respectfully dissent from the majority's conclusion that this case presents merely a level two stop of reasonable scope and duration.

¶ 13 First and foremost, I believe that Trooper Wright made a de facto arrest of Worwood when he took physical custody of Worwood and transported him from the canyon where the initial encounter occurred to Wright's private residence. As a level three encounter, this arrest was illegal because it was not supported by probable cause. See State v. Hansen, 2002 UT 125, ¶ 36, 63 P.3d 650 ("A level three encounter involves an arrest, which has been characterized as a highly intrusive or lengthy detention that requires probable cause." (alterations omitted) (quotations and citations omitted)). However, even if Wright's actions created only a level two encounter, Worwood's detention was unreasonable in both its scope and its duration. See Salt Lake City v. Ray, 2000 UT App 55, ¶ 10, 998 P.2d 274 ("[A level two] 'detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop[.]'" (citation omitted)). Wright's actions violated the Fourth Amendment under either analysis, and I would suppress all evidence obtained as a result of those actions.

¶ 14 The only competent evidence of the events surrounding Worwood's encounter with Wright was Wright's testimony at the suppression hearing.[1] Wright testified that

he took Worwood into custody after observing his bloodshot eyes and slurred speech. Rather than perform field sobriety tests on Worwood at the scene, however, Wright transported him in Wright's private vehicle out of the canyon, onto the state highway, and to Wright's private residence[2] in Levan, Utah, a distance of "about a mile and a half." Wright testified that he believed that Worwood knew he was a law enforcement officer. Wright entrusted Worwood's vehicle to Wright's passenger, and the passenger drove the vehicle to a local dairy to call for assistance, and then to Wright's residence.

¶ 15 These actions represent a significant seizure of Worwood and his vehicle, and any reasonable person in Worwood's position would have interpreted these actions as an arrest. Accordingly, I would hold that Wright effected a level three arrest as soon as Worwood became aware that he was in police custody, that his vehicle had been seized, and that he was going to be transported a significant distance for the purpose of being handed off to another officer. See State v. Leonard, 825 P.2d 664, 674 (Utah Ct.App.1991) (Orme, J., dissenting) ("The accepted rule is that what might have otherwise been a level-two stop evolves into a level-three de facto arrest when, in view of all the circumstances, a reasonable, innocent person in the suspect's place would believe himself to be under arrest."); see also Florida v. Royer, 460 U.S. 491, 502, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (characterizing the relevant inquiry as whether the suspect believed he was being detained). I would also hold that Wright's observations of Worwood provided only a reasonable suspicion that Worwood was driving while intoxicated, but not the level of probable cause required to make an arrest.[3]

1. The trooper who formally arrested Worwood testified at the preliminary hearing, but he offered only hearsay testimony about the circumstances of Worwood's initial detention and transport.

2. The fact that Wright chose to transport Worwood to his private residence gives me additional concern. While it does not appear to have been a factor in this case, the transport of a lone detainee to a private residence, in an unmarked car by an off-duty officer, could present signifi-

cant cause for alarm to the detainee, particularly if it occurred at night. If the officer was an imposter, discomfort could escalate into grave danger. I do not believe that this is the sort of scenario that we wish to encourage by excusing Wright's actions in this case.

3. Wright testified that the only evidence of Worwood's intoxication at the time of his initial detention was his bloodshot eyes and slurred speech. He testified that he only smelled alcohol on Worwood once he and Worwood were inside

¶ 16 Wright's reasonable suspicion clearly justified some detention of Worwood for further investigation. However, Wright exceeded the permissible scope and duration of that detention when he transported Worwood to his home for performance of field sobriety tests that could just as easily have been conducted at the initial scene. "Officers must diligently pursue a means of investigation that is likely to confirm or dispel their suspicions quickly[.]" *State v. Chism*, 2005 UT App 41, ¶ 12, 107 P.3d 706 (quotations and citation omitted). Wright testified that he could have performed field sobriety tests at the scene of the initial encounter, but chose not to for the sole reason of personal convenience.[4] The resulting increase in both the scope and the duration of Worwood's detention were therefore unnecessary and exceeded the legal boundaries of an otherwise legitimate level two stop. *See id.* at ¶ 15 ("Investigative acts that are not reasonably related to dispelling or resolving the articulated grounds for the stop are permissible only if they do not add to the delay already lawfully experienced and do not represent any further intrusion on [the detainee's] rights." (alteration in original) (quotations and citation omitted)).

¶ 17 The majority suggests that Worwood's transport was also justified by Wright's motive to obtain more accurate results from field sobriety tests. I find this unavailing, as field sobriety tests are routinely performed roadside in less than ideal conditions. Further, such a justification would permit the

routine "relocation" of drunken driving suspects to a jail or police station where environmental factors such as light, sound, and footing could be controlled.

¶ 18 For these reasons,[5] I would hold that Wright's actions constitute both a level three stop unsupported by probable cause, and an impermissible departure from the allowable scope and duration of a legitimate level two stop. Under either analysis, the challenged evidence must be suppressed and Worwood's conviction reversed. Accordingly, I dissent from the majority opinion.

---

Wright's vehicle. Accordingly, Worwood's arrest preceded Wright's observation of the smell of alcohol, and that evidence cannot be used to bolster the legality of Worwood's initial arrest. Even taking the smell of alcohol into account, however, I believe that Wright could only objectively be said to have had a reasonable suspicion of Worwood's intoxication.

4. Wright, being off duty, did not want to "mess[ ] up [his] night" by incurring the responsibility for Worwood's potential arrest and its accompanying paperwork. Instead, he wanted to hand off the situation to a fellow officer. While I find this motivation understandable, Wright, having chosen to exercise the power of the State to investigate Worwood despite his off-duty status, owed Worwood the full complement of constitutional rights. I do not believe that those rights permit the scope or duration of a level two stop to be

extended on the basis of an officer's desire to avoid the responsibility of otherwise necessary paperwork.

5. I believe reversal is warranted solely on the basis of violations of Worwood's Fourth Amendment rights. However, I cannot help looking beyond the immediate case and seeing in the majority opinion a green light for the routine transport of drunken driving suspects on the flimsiest of excuses. In my opinion, today's result opens the door for all manners of avoidance of the requirements of the Fourth Amendment. For example, the resulting ability to make an inventory search of a suspect's vehicle will provide a strong incentive for law enforcement to "smell alcohol" and transport the suspect and his vehicle, allowing them to make an otherwise impermissible search of the vehicle for contraband.