2013 UT App 22

# THE UTAH COURT OF APPEALS

STATE OF UTAH,

*Plaintiff and Appellant,*

*v.*

STEPHEN BRADLEY ADAMSON,

*Defendant and Appellee.*

Opinion
No. 20100831-CA
Filed January 25, 2013

Third District, Salt Lake Department
The Honorable Randall N. Skanchy
No. 091901221

John E. Swallow and Jeffrey S. Gray,
Attorneys for Appellant

Walter F. Bugden and John W. Anderson,
Attorneys for Appellee

JUDGE STEPHEN L. ROTH authored this Opinion,
in which JUDGES WILLIAM A. THORNE JR.
and MICHELE M. CHRISTIANSEN concurred.

ROTH, Judge:

¶1     The State of Utah appeals the district court's grant of
Defendant Stephen Bradley Adamson's motion to suppress. We
reverse and remand.

BACKGROUND

¶2      In December 2008, for training purposes, Trooper Cody McCoy and his field training officer, Officer Brian Spillman, were waiting in a police vehicle parked near a bar in hopes of observing a driving under the influence (DUI) violation. Eventually, a man later identified as Adamson drove a vehicle out of the bar's parking lot. The officers noticed that Adamson's vehicle did not have an operable rear license plate light, so they began to follow him. As the officers followed Adamson, he moved into a turning lane and then back into a traffic lane without using a signal. Having observed these violations, the officers activated the patrol car's overhead lights and pulled Adamson over.

¶3      Trooper McCoy approached Adamson's car while Officer Spillman remained in the patrol car. Trooper McCoy asked for Adamson's driver license, registration, and insurance information, which Adamson appeared to produce. Trooper McCoy had a difficult time understanding what Adamson was saying during this initial interaction because Adamson would look away and spoke very softly. While talking to Adamson, Trooper McCoy noticed a minty scent but, at that time, detected no odor of alcohol.

¶4      Trooper McCoy took Adamson's documentation back to the patrol car. There, he and Officer Spillman discovered that Adamson had produced an identification card rather than a driver license. Nonetheless, the officers managed to run a computer check, which revealed that Adamson had a valid driver license but was an alcohol restricted driver. As an alcohol restricted driver, Adamson was prohibited from driving with "any measurable or detectable amount of alcohol" in his body, *see* Utah Code Ann. § 41-6a-530 (LexisNexis 2010), and he was further required to install and maintain an ignition interlock device in his vehicle, *see id*. § 41-6a-518(2) (LexisNexis Supp. 2012). A warrants check also revealed that Adamson had two prior DUI convictions but no outstanding warrants.

¶5      Trooper McCoy also recounted his interaction with Adamson to Officer Spillman. Not knowing during the initial encounter that Adamson was an alcohol restricted driver, Trooper McCoy had not looked for an ignition interlock device and had not noticed if there was one in the vehicle. Because of Adamson's licensing restriction, Officer Spillman instructed Trooper McCoy to verify that an ignition interlock device was installed in Adamson's car. Because of Adamson's criminal history, Officer Spillman also instructed Trooper McCoy to have Adamson exit his car to better assess whether he had consumed alcohol.

¶6      Trooper McCoy returned to Adamson's car and asked him whether he had an ignition interlock device installed. Adamson grabbed the device, turned to Trooper McCoy, and said, "Oh yeah, it's hanging right here." Trooper McCoy then noticed the odor of alcohol coming from Adamson. Trooper McCoy instructed Adamson to step out of the car and administered a field sobriety test, which Adamson failed. Adamson was arrested and a subsequent blood test revealed that he had a blood alcohol level of 0.26, over three times the legal limit.

¶7      In addition to other lesser violations, Adamson was charged with DUI, *see* Utah Code Ann. § 41-6a-502 (LexisNexis 2010), violation of his status as an alcohol restricted driver, *see id.* § 41-6a-530, and tampering with or circumventing the ignition interlock device that he was required to install and maintain in his vehicle, *see id.* § 41-6a-518 (LexisNexis Supp. 2012); *id.* § 41-6a-518.1 (LexisNexis 2010). Adamson filed a motion to suppress, arguing that by administering the field sobriety test Trooper McCoy impermissibly extended the scope of the traffic stop to an investigation of a DUI violation without reasonable suspicion of such additional criminal activity. The district court agreed and suppressed the evidence from the field sobriety test and subsequent blood test. The State now appeals.

ISSUE AND STANDARD OF REVIEW

¶8    The State challenges the district court's decision to grant Adamson's motion to suppress. The district court's decision to grant or deny a motion to suppress is a legal conclusion that is reviewed for correctness. *State v. Applegate*, 2008 UT 63, ¶ 5, 194 P.3d 925.

ANALYSIS

¶9    The Fourth Amendment to the United States Constitution prohibits only searches and seizures that are unreasonable. *State v. Lopez*, 873 P.2d 1127, 1131 (Utah 1994). A routine traffic stop is reasonable under the Fourth Amendment if justified at its inception and if the resulting detention is "reasonably related in scope to the circumstances that justified the interference in the first place." *State v. Baker*, 2010 UT 18, ¶ 12, 229 P.3d 650 (citations and internal quotation marks omitted). *See also Applegate*, 2008 UT 63, ¶¶ 8–9 (explaining that there are three levels of constitutionally permissible police to public encounters, and a "brief, investigatory stop of a vehicle constitutes a level two encounter, for which only reasonable, articulable suspicion is required" (citations and internal quotation marks omitted)). "Once a traffic stop is made, the [resulting] detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Baker*, 2010 UT 18, ¶ 17 (citation and internal quotation marks omitted). And "[b]oth the length and [the] scope of the detention must be strictly tied to and justified by the circumstances which rendered its initiation permissible." *Lopez*, 873 P.2d at 1132 (second alteration in original) (citation and internal quotation marks omitted). But if the detaining officer forms reasonable suspicion of additional criminal activity during the course of a traffic stop, the officer may investigate further. *Baker*, 2010 UT 18, ¶ 13; *Lopez*, 873 P.2d at 1132 ("Investigative questioning that further detains the driver must be supported by reasonable suspicion of [additional] criminal activity."). Nevertheless, "the scope of the stop is still limited" and the officer

must diligently investigate in a manner that is likely to confirm or dispel the new suspicion quickly. *Lopez*, 873 P.2d at 1132.

¶10    It is uncontested that the traffic stop at issue here was justified at its inception because the officers witnessed Adamson commit two violations. *See id.* (explaining that a routine traffic stop is justified at its inception "if the stop is incident to a traffic violation committed in the officers' presence" and may be supported either by probable cause based on "[a]n observed traffic violation" or by reasonable suspicion that the driver is committing or has committed a traffic offense (citations and internal quotation marks omitted)). The issue presented for our review is whether the resulting detention was reasonably related in scope to the circumstances that justified the traffic stop in the first place, or whether during the traffic stop there arose reasonable suspicion of additional criminal activity to justify expansion of the stop.

¶11    In granting Adamson's motion to suppress, the district court concluded that the officers impermissibly expanded the scope of the traffic stop to an investigation of a DUI violation without reasonable suspicion of such additional criminal activity. In addition, Adamson argues that the officers impermissibly expanded the scope of the stop to an investigation of whether he had violated the alcohol restrictions on his driver license without commensurate reasonable suspicion. We conclude, however, that the officers did not exceed the permissible scope of the traffic stop by briefly questioning Adamson to determine whether he was in compliance with the licensing restriction that required that he have an ignition interlock device installed in his vehicle and, therefore, did not need reasonable suspicion of additional criminal activity to conduct such an inquiry. In the course of confirming compliance with the licensing restrictions, the officers developed reasonable suspicion of additional criminal activity, i.e., that Adamson had committed a DUI violation and had violated the restrictions placed on him as an alcohol restricted driver. As a result, the officers' detention of Adamson for further investigation was not unreasonable and did not violate his Fourth Amendment rights.

¶12 In the course of conducting a routine traffic stop, an officer "may request a driver[] license and vehicle registration, conduct a computer check, and issue a citation," and may also conduct a warrants check. *Id.* at 1132–33 (citation and internal quotation marks omitted). In particular, the officer may conduct "[a] computer check of public records on a driver during an ordinary traffic stop." *State v. Chism*, 2005 UT App 41, ¶ 15, 107 P.3d 706. An inquiry of that sort is reasonable during the course of a traffic stop because though "[a] driver license [itself] is proof that driving privileges were extended . . . on the date of issue[,] . . . those privileges are subject to revocation" or modification or restriction, "which cannot be determined by examining the driver license itself." *Id.* ¶ 15 n.7. Thus, "[s]ome further procedure, such as a computer check, is necessary to determine whether the status of driving privileges has changed since the issuance of the license." *Id.* Such a check imposes "no additional intrusion on the driver, who must already produce [a] driver license and submit to confirmation of . . . driving privileges." *Id.* ¶ 15 (footnote omitted). And such a check does not impose any "significant extension of the period of detention beyond that which the driver is already lawfully subjected to in order to verify continuing driving privileges." *Id.* "However, once the driver has produced a valid driver[] license and evidence of entitlement to use the vehicle, he must be allowed to proceed on his way . . . ." *Lopez*, 873 P.2d at 1132 (citation and internal quotation marks omitted); *Baker*, 2010 UT 18, ¶ 17 ("[O]nce the lawful purpose of the stop has concluded, the [driver] must be released from the[] temporary seizure."). *See also United States v. Wood*, 106 F.3d 942, 945 (10th Cir. 1997) ("During a traffic stop . . . , a police officer is permitted to ask such questions, examine such documentation, and run such computer verifications as necessary to determine that the driver has a valid license and is entitled to operate the vehicle. The officer may detain the driver and his vehicle as long as reasonably necessary to make these determinations and to issue a citation or warning." (citation omitted)).

¶13 Because an officer may conduct a computer check in order to verify continuing driving privileges, it naturally follows that the

officer may conduct a brief inquiry to confirm compliance with a licensing restriction that comes to the officer's attention.[1] If an officer were precluded from following up on such information altogether, the permissible computer check for licensing restrictions would be meaningless. This kind of brief inquiry to confirm compliance with applicable licensing restrictions does not amount to an expansion of the traffic stop and therefore does not require reasonable suspicion of additional criminal activity, although an inquiry of this sort is certainly subject to the requirement that the detention "must be temporary and last no longer than is necessary to effectuate the purpose of the stop," *Lopez*, 873 P.2d at 1132 (citation and internal quotation marks omitted).

¶14    Here, while conducting a computer check to verify Adamson's driving privileges,[2] Trooper McCoy discovered that Adamson was an alcohol restricted driver and was required to install and maintain an ignition interlock device in his vehicle. Not knowing of these license restrictions during the initial encounter, Trooper McCoy had no reason at the time to look for an ignition interlock device and did not notice if one was installed. So when Trooper McCoy returned to Adamson's car after conducting the computer check—in addition to doing other things that would have been within the scope of the original traffic stop, such as issuing a citation or warning for the traffic violations, asking whether Adamson had his driver license in his possession, and returning Adamson's documents—it was reasonable for Trooper McCoy to inquire whether there was an interlock device on the vehicle. Such

---

[1]For example, if a driver has a corrective lens restriction but is not wearing glasses, the officer may simply ask if the driver is wearing contacts or is otherwise in compliance.

[2]Trooper McCoy's efforts to confirm Adamson's driving privileges were particularly reasonable under the facts of this case, given that Adamson provided Trooper McCoy with an identification card rather than a driver license.

a brief inquiry to confirm compliance with the applicable licensing restriction was within the scope of the initial detention.[3] *See Chism*, 2005 UT App 41, ¶ 15 (conducting a computer check to confirm driving privileges imposes "no additional intrusion on the driver, who must already produce his driver license and submit to confirmation of his or her driving privileges" and does not "significant[ly] exten[d] the period of detention beyond that which the driver is already lawfully subjected to in order to verify continuing driving privileges").

¶15    When Adamson responded to the inquiry, Trooper McCoy smelled the odor of alcohol. Adamson does not challenge that, by that time, Trooper McCoy had reasonable suspicion of additional criminal activity, i.e., both a violation of Adamson's alcohol restricted status and a DUI violation.[4] *See State v. Morris*, 2011 UT

---

[3]In reaching this decision, we confine ourselves to the facts of this case and do not address more generally the extent to which an officer may look into a driver's compliance with applicable licensing restrictions. For example, the question remains for another day whether an officer may go beyond simple inquiry to determine whether an interlock device is actually operational or whether an alcohol restricted driver has been drinking yet still remain within the scope of the original stop.

[4]When Trooper McCoy discovered Adamson's licensing restrictions and criminal history, Officer Spillman instructed Trooper McCoy not only to inquire about the interlock device but also to have Adamson exit his car to better assess whether he had consumed any alcohol. In granting Adamson's motion to suppress, the district court concluded that Trooper McCoy did not have reasonable suspicion to expand the scope of the traffic stop to investigate whether Adamson had committed a DUI violation, emphasizing in particular that Adamson's criminal history was insufficient to raise such reasonable suspicion.

(continued...)

40, ¶ 29, 259 P.3d 116 (explaining that the smell of alcohol may generate reasonable suspicion of criminal activity, thus justifying further detention). Trooper McCoy was then justified in further detaining Adamson for the purpose of conducting a field sobriety test, which Adamson failed and which led to a blood test that showed his blood level to be over three times the legal limit. Because Trooper McCoy did not unreasonably detain or extend the detention by inquiring whether Adamson had an ignition interlock device installed on the vehicle he was driving, the district court erred in granting Adamson's motion to suppress.

CONCLUSION

¶16   We conclude that Trooper McCoy acted within the permissible scope of the traffic stop by asking a single question to confirm Adamson's compliance with his alcohol-restricted license. In the course of doing so, Trooper McCoy smelled the odor of alcohol on Adamson and formed reasonable suspicion of additional criminal activity. Trooper McCoy was then justified in detaining Adamson for the purpose of conducting field sobriety tests. Accordingly, we reverse the district court's grant of Adamson's motion to suppress.

---

[4](...continued)
Because we have concluded that Trooper McCoy's question about the ignition interlock device did not exceed or impermissibly extend the scope of the original traffic stop, we need not address whether there was reasonable suspicion to justify the question, nor is it necessary for us to address whether Trooper McCoy and Officer Spillman had a subjective intent to detain Adamson beyond the scope of the traffic stop. Rather, once Trooper McCoy smelled the odor of alcohol coming from Adamson as he responded to the question about the interlock device there was reasonable suspicion to justify further investigation.

———