**2016 UT App 136**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellant,
*v.*
MORIAH LEE MIKKELSON,
Appellee.

Opinion
No. 20150252-CA
Filed June 30, 2016

Seventh District Court, Price Department
The Honorable Douglas B. Thomas
No. 141700193

Sean D. Reyes and Jeffrey S. Gray, Attorneys
for Appellant

Don M. Torgerson and Mandie J. Torgerson,
Attorneys for Appellee

SENIOR JUDGE JUDITH M. BILLINGS authored this Opinion, in
which JUDGE J. FREDERIC VOROS JR. and SENIOR JUDGE PAMELA T.
GREENWOOD concurred.[1]

BILLINGS, Senior Judge:

¶1      This appeal arises from the district court's grant of a
motion to suppress evidence obtained after officers conducted a
traffic stop for the sole purpose of investigating a passenger's
possible probation violations. The State appeals the district
court's ruling, asserting that the driver's Fourth Amendment

---

1. Senior Judges Judith M. Billings and Pamela T. Greenwood sat
by special assignment as authorized by law. *See generally* Utah R.
Jud. Admin. 11-201(6).

rights were not violated in the course of the stop. *See* U.S. Const. amend. IV. We reverse and remand.

## BACKGROUND

¶2 On April 22, 2014, two patrol officers observed a vehicle idling behind an apartment building in an area of Price, Utah, known for drug and criminal activity. The officers confirmed the vehicle was registered to an individual they knew to have been involved in the use and distribution of drugs. After the officers had observed the vehicle for approximately ten minutes, a woman "approached the vehicle, placed something into the back bed of the truck and then entered the vehicle" on the passenger side "as the vehicle began to leave." The officers recognized the woman from previous law enforcement encounters involving drugs and other crimes, and both knew she was currently on probation. The officers contacted the woman's probation officer and confirmed that she was in violation of her 11:00 p.m. curfew. The probation officer was also concerned that the probationer had not contacted him upon her release from jail, was in an area of high drug activity, and was riding in a vehicle registered to a known drug offender. The probation officer asked the officers to make contact with the probationer, "find out what's going on," and call him back.

¶3 The officers pulled over the vehicle and questioned the probationer. They discovered that she had been using drugs and, at the direction of the probation officer, took her into custody on a seventy-two-hour probation hold. They also ran a background check on the driver, Moriah Lee Mikkelson,[2] and discovered that her license had expired and that there was an active warrant for her arrest. The officers arrested Mikkelson on the warrant and, in

---

2. Although Mikkelson was driving the vehicle, she was not its registered owner.

a search incident to arrest, discovered drug paraphernalia on her person. During an inventory of the vehicle, they also discovered methamphetamine and more drug paraphernalia.

¶4    Mikkelson was charged with unlawful possession of methamphetamine, a third degree felony; unlawful possession of drug paraphernalia, a class B misdemeanor; and driving on a suspended license, a class C misdemeanor. Mikkelson moved to suppress the drug evidence, arguing that the traffic stop was not supported by reasonable suspicion of criminal activity. The district court agreed, concluding that there was no justification for the stop apart from the investigation of the passenger's probation violation. The court determined that probation officers cannot delegate their authority to investigate probationers to police officers. The State appeals.

ISSUE AND STANDARD OF REVIEW

¶5    The State challenges the district court's grant of Mikkelson's motion to suppress. "We review a trial court's decision to grant or deny a motion to suppress for an alleged Fourth Amendment violation as a mixed question of law and fact," reviewing the district court's factual findings for clear error and its legal conclusions, "including its application of law to the facts of the case," for correctness. *State v. Fuller*, 2014 UT 29, ¶ 17, 332 P.3d 937.

ANALYSIS

¶6    While probationers and parolees "have constitutional rights greater than do prisoners," their "rights against searches and seizures by parole [or probation] officers are not governed by the same standards that govern the privacy rights of individuals not subject to the supervisory control of the state." *State v. Velasquez*, 672 P.2d 1254, 1258 (Utah 1983); *see also State v.*

*Burningham*, 2000 UT App 229, ¶ 9, 10 P.3d 355. Searches and seizures of probationers by probation officers are permissible if the probation officer has "a reasonable suspicion that a [probationer] has committed a [probation] violation or crime" and the search is reasonably related to the probation officer's duties. *See Velasquez*, 672 P.2d at 1260; *see also Burningham*, 2000 UT App 229, ¶ 9. But "while a probation officer's search need only be supported by reasonable suspicion" of a probation violation or criminal activity, "police officers are required to abide by the usual . . . requirements of the Fourth Amendment." *Burningham*, 2000 UT App 229, ¶ 9; *see also Velasquez*, 672 P.2d at 1262 ("[P]olice officers may [not] engage in warrantless searches and seizures as to parolees on the same basis as parole officers.").

¶7 However, this rule has a narrow application—it applies where an officer is acting "solely as a police officer" and contemplates the possibility that a police officer might be given authority to act as a parole or probation officer in certain circumstances. *See Burningham*, 2000 UT App 229, ¶ 10. For example, in some areas, a shortage of probation officers may require courts to enlist law enforcement officers to carry out the duties of a probation officer. *Id.* The probation officer in this case confirmed that in Price, it is difficult to monitor probationers and that he relies on police officers to notify him when they observe potential probation violations. Indeed, our supreme court has indicated that such cooperation between police officers and parole officers is permissible:

> "The mere fact that [a] police officer was the first to suspect that [the parolee] was engaged in criminal activity and related this to the parole officer . . . in no way alters the legality of the parole officer's presence [i.e., search]. It does not require the suppression of the seized evidence from use in a subsequent criminal prosecution."

*Velasquez*, 672 P.2d at 1263 (alterations and omission in original) (quoting *Santos v. New York State Bd. of Parole*, 441 F.2d 1216, 1218 (2d Cir. 1971)).

¶8 Our supreme court has also indicated that "a parole officer may properly request police assistance in the apprehension and investigation of a parole violator." *Reeves v. Turner*, 501 P.2d 1212, 1214 (Utah 1972). We are aware of no "reason why the same should not be true in the probation context." *See State v. Martinez*, 811 P.2d 205, 209–10 (Utah Ct. App. 1991); *see also State v. Wheat*, 2001 UT App 38U, para. 5 (citing *Reeves* in stating that a probation officer may "legitimately" request that a police officer conduct a breathalyzer test of a probationer). This is consistent with rulings in a number of other jurisdictions holding that probation officers may enlist the aid of police officers in performing searches and seizures of probationers. *See, e.g.*, *United States v. McCarty*, 82 F.3d 943, 947 (10th Cir. 1996); *United States v. Cardona*, 903 F.2d 60, 66 (1st Cir. 1990); *State v. Armstrong*, 347 P.3d 1025, 1031 (Idaho Ct. App. 2015). As the United States Court of Appeals for the First Circuit has recognized, the Fourth Amendment is more concerned "with who authorizes searches and seizures, and the bases on which they are authorized, than with who implements reached decisions." *See Cardona*, 903 F.2d at 66. Police and probation officers are therefore "fungible when the former serve as mere implementers of decisions already made by the latter," *id.*, and "if a parole or probation officer is justified in making a search, he or she may enlist the aid of police officers in performing that duty," *see Armstrong*, 347 P.3d at 1031.

¶9 Mikkelson "concedes that law enforcement can assist probation officers in fulfilling the probation officer's duties . . . at the probation officer's request." But Mikkelson asserts that it is not within a probation officer's authority—or within the authority of an officer acting on a probation officer's behalf—to pull over a vehicle driven by a non-probationer based on

reasonable suspicion that a passenger has violated the terms of her probation.

¶10    Mikkelson's argument rests on the assertion, derived from language in *State v. Morris*, 2011 UT 40, 259 P.3d 116, that Mikkelson "could not be seized (and the vehicle stopped) unless officers believed that she had committed a traffic offense or that she [or her passenger] was involved in *criminal* activity." (Emphasis added.) *See id.* ¶ 16 ("Under the Fourth Amendment, a police officer may stop a vehicle only if the officer has a particularized and objective basis for suspecting the driver or a passenger is engaged in criminal activity."). Mikkelson therefore suggests that regardless of whether her passenger had a reduced expectation of privacy due to her status as a probationer, and regardless of whether the probation officer could delegate his authority to police, only a criminal violation by the passenger could justify an incidental stop of Mikkelson. Despite the language in *Morris*, we are aware of no case explicitly ruling that a vehicle may be stopped only on the basis of criminal activity. Indeed, the United States Supreme Court in *Brendlin v. California*, 551 U.S. 249 (2007), used much broader language to describe circumstances where a vehicle may be stopped, indicating that traffic stops may be initiated to investigate "fault," "wrongdoing," or "conduct." *Id.* at 257 & n.3; *see also State v. Chism*, 2005 UT App 41, ¶ 11, 107 P.3d 706 (indicating that an investigatory detention requires "reasonable suspicion of *wrongdoing*" (emphasis added)). Mikkelson's passenger's probation violation was wrongdoing for which she could be constitutionally detained by or under the direction of her probation officer. *Velasquez*, 672 P.2d at 1260. Thus, a traffic stop initiated on this basis was permissible.

¶11    "During a lawful traffic stop, '[t]he temporary seizure of driver and passengers ordinarily continues, and remains reasonable, for the duration of the stop.'" *State v. Baker*, 2010 UT 18, ¶ 13, 229 P.3d 650 (alteration in original) (quoting *Arizona v.*

*Johnson*, 555 U.S. 323, 333 (2009)). Traffic stops may be initiated not only to investigate a driver, but also "solely to investigate a passenger's conduct." *Brendlin*, 551 U.S. at 257 n.3. We see no distinction between an occupant seized incidental to a traffic violation or investigation of criminal activity and an occupant, such as Mikkelson, seized incidental to the investigation of a probation violation. In either circumstance, the police have "no suspicion at all regarding . . . criminal activity" on the part of the incidentally detained occupants, yet they "may still detain [those occupants] during the course of the lawful traffic stop." *See Baker*, 2010 UT 18, ¶ 16. The "unique authority to detain [all occupants of a stopped vehicle] absent any suspicion" is based on the brevity and inherent danger of traffic stops, not on individual wrongdoing by the occupants.[3] *See id.* Thus, the fact

---

3. While all occupants of a lawfully detained vehicle may be detained until the purpose of the stop is effectuated, *see State v. Baker*, 2010 UT 18, ¶¶ 16–17, 229 P.3d 650, the Fourth Amendment protects incidentally detained occupants from further intrusion by prohibiting law enforcement officers from conducting "[i]nvestigative acts that are not reasonably related to dispelling or resolving the articulated grounds for [a traffic] stop" if they "add to the delay already lawfully experienced" or "represent any further intrusion on [the detainee's] rights," *State v. Chism*, 2005 UT App 41, ¶ 15, 107 P.3d 706 (third alteration in original) (citation and internal quotation marks omitted). Because the grounds for Mikkelson's motion to suppress were limited to her assertion that the traffic stop was unlawful at its inception and because the district court's findings and conclusions were limited to that question, we do not consider whether the officers' background check of Mikkelson during the traffic stop violated her Fourth Amendment rights or whether such a violation would require suppression of the evidence under the circumstances of this case. *See Utah v. Strieff*, No. 14-1373 (U.S. June 20, 2016).

that Mikkelson's passenger was stopped in connection with a probation violation rather than criminal activity does not affect the legality of the stop.

CONCLUSION

¶12    We hold that police officers may investigate, search, and seize probationers under the direction of probation officers. We further hold that a driver may be lawfully detained incident to a traffic stop initiated for the purpose of investigating a passenger's parole or probation violation. Accordingly, we reverse the district court's grant of Mikkelson's motion to suppress and remand this case for further proceedings.

———————